723 So.2d 208 (1998)
AMENDMENTS TO THE FLORIDA FAMILY LAW RULES OF PROCEDURE.
No. 89,955.
Supreme Court of Florida.
October 29, 1998.
Durand Adams, Chair of the Family Court Steering Committee, Bradenton, and George S. Reynolds, III, Chair of the Family Law Rules Committee, and John F. Harkness, Jr., Executive Director of The Florida Bar, Tallahassee, for Petitioners.
OVERTON, Justice.
In February 1998, this Court issued an opinion in which we amended a number of the Florida Family Law Rules and completely amended the Florida Family Law Forms. See Amendments to the Family Law Rules of Procedure, 713 So.2d 1 (Fla.1998) (Family Law Opinion). In that opinion, we also rejected a number of rule amendment proposals. In doing so, however, we stated that:
[W]e believe that many of the proposed changes that we have declined to approve in this opinion may have merit. As such, we will allow revisions to the proposed changes and/or additional comments to the matters discussed in this opinion to be submitted to this Court no later than May 1, 1998. This Court may set any of those issues on which comment is received for oral argument during the Court's June 1998 oral argument calendar.
Id. at 9-10. Both the Family Law Rules Committee (rules committee) and the Family Court Steering Committee (steering committee) filed petitions prior to the May 1 deadline asking that we readdress a number of issues. The committees also asked that we change some of the rules and forms for clarification purposes or to correct errors or omissions in the forms. After hearing oral argument and reviewing other comments received we address below each of the issues raised by the committees.

Rule Regulating the Florida Bar 10-2.1
Under Rule Regulating the Florida Bar 10-2.1, certain information must be disclosed any time a nonlawyer assists a person in the completion of a form. In our Family Law Opinion, this Court concluded that this information need not be disclosed on domestic and repeat violence petition forms because such disclosure might place the preparer at risk. Although we amended the family law forms accordingly, we did not amend rule 10-2.1 to reflect this exception to the disclosure requirement. In its petition, the steering committee has requested that we modify the rule to reflect this exception. We approve this request and modify rule 10-2.1 as set forth in appendix A to this opinion.

Florida Family Law Rule 12.170 Counterclaims and Crossclaims
The steering committee also asks that we amend Florida Family Law Rule 12.170 to clarify that the rule governs both counterclaims and crossclaims. Although this Court's opinion in In re Family Law Rules of Procedure, 663 So.2d 1049 (Fla.1995), provided that the rule governed both counterclaims and crossclaims, apparently, when West Group published the opinion, it erroneously omitted counterclaims from the rule. See In re Family Law Rules of Procedure, 663 So.2d 1049, 1063 (Fla.1995). To eliminate any confusion regarding this issue, we restate in this opinion that rule 12.170 governs both crossclaims and counterclaims. In appendix A we restate the rule in full to ensure that counterclaims are included in the rule.

*209 Rule 12.280General Provisions Governing Discovery and

Rule 12.400Confidentiality of Records and Proceedings

Both committees ask that we find, as a matter of public policy, that any financial information filed in a family law case may be sealed by the court at the request of one or both of the parties. Currently, the sealing of court records in family law cases is governed by article I, section 24, of the Florida Constitution; Rule of Judicial Administration 2.051; and Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988). See Fla. Fam. L.R. 12.280, 12.400. According to the committees, the application of the principles set forth in those provisions and in Barron are too restrictive. Because financial affidavits must be filed with the court, the committees assert that parties will be reluctant to reveal information knowing that the information will be contained in a document open to the public. Additionally, they contend that, with the advent of new technology and the consequent ability to access court records via computer, third parties will be likely to abuse the system by using the financial information to their advantage.
In Barron, we reiterated that a strong presumption of openness in judicial proceedings exists and we specifically found that such a presumption applies to both civil and criminal proceedings. We noted that public access to court proceedings and records was important to assure testimonial trustworthiness; in providing a wholesome effect on all officers of the court for purposes of moving those officers to a strict conscientiousness in the performance of duty; in allowing nonparties the opportunity of learning whether they are affected; and in instilling a strong confidence in judicial remedies, which would be absent under a system of secrecy. In other words, as particularly pertinent here, public access to court proceedings and records is essential to ensure that judicial remedies are consistent, that family law files are open for independent review, and that confidence in family law proceedings is not undermined. Were we to allow for the sealing of financial affidavits upon request, we would be eliminating an important factor of government accountability that is necessary to ensure similar treatment for similarly situated litigants.
As we stated in Barron, closure of court proceedings or records should occur only under limited circumstances and in this regard family law proceedings should not be given special consideration. Moreover, we also noted in Barron that the legislature was free to enact legislation limiting public access to family law proceedings, but because it had not done so, family law proceedings must be cloaked with a presumption of openness. Barron was issued in 1988 and the legislature has not provided any additional provisions for closure in family law proceedings since the issuance of that opinion. Moreover, since our decision in Barron, the legislature proposed and the public subsequently enacted article I, section 24, of the Florida Constitution, which provides in pertinent part:
Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution.
Art. I, § 24(a). Under this provision, any person has the right to inspect court files unless those files are specifically exempted from public inspection. As indicated above, neither the legislature nor this Court has specifically exempted financial information in family law proceedings from public inspection. In fact, just prior to the adoption of section 24(a), we adopted rule 2.051 to clarify when court records could be deemed to be confidential. See In re Amendments to the Florida Rules of Judicial Administration-Public Access To Judicial Records, 608 So.2d 472 (Fla.1992). In doing so, we expressly approved the principles of Barron by including *210 them in the body of the rule. See Rule 2.051(c)(9). That fact is specifically noted in the 1995 commentary to rule 2.051. We conclude that the committees' request to allow the routine sealing of such records must be denied.
While we understand and are sympathetic to the committees' concerns regarding the loss of privacy inherent in the filing of financial affidavits, we simply cannot find that public policy dictates the regular sealing of this type of information. In fact, as the discussion above illustrates, public policy dictates just the opposite conclusion, that is, that such records are presumed to be public.
We emphasize that, although we have previously stated in other opinions our conclusion that a presumption of openness applies to family law proceedings, this does not mean that financial records in those proceedings can never be sealed. Under the Family Law Rules, the sealing of records is governed by rule 2.051. Under that rule, a court is permitted to seal any court record where, among other things, confidentiality is required to protect trade secrets, to avoid substantial injury to innocent third parties, or to avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of proceeding sought to be closed. Under the rule, it is within the discretion of the trial judge to seal financial records in family law proceedings if the trial judge finds it necessary to do so because it has been shown that third parties are likely to use this information in an abusive manner.
For instance, if it is likely that access to the financial information would subject a party to abuse such as the use of the information by third parties for purposes unrelated to government or judicial accountability or to first amendment rights, then a trial judge has the authority to seal the financial information. In doing so, however, the order sealing the records should be conditional in that the financial information should be disclosed to any person who establishes that disclosure of the information is necessary for government or judicial accountability or has a proper first amendment right to the information. This clarification should alleviate some of the committees' concerns because it explains that trial judges have the ability to protect the privacy interests of parties that could be adversely affected by new technology.

Rule 12.285Mandatory Disclosure

Both committees have requested that we amend rule 12.285 to reflect that a Child Support Guidelines Worksheet must be filed with the court rather than just served on the other party. Currently, the instructions to the forms require the worksheet to be filed with the court but the rule allows it simply to be served on the other party. This creates a conflict between the rule and instructions. We agree that the worksheet should be filed with the court so that the court has the benefit of this information when making its decision regarding the appropriate amount of child support to be awarded. As such, we have amended the rule to require the filing of the worksheet with the court. This amendment also necessitates a change to Family Law Form 12.932, Certificate of Compliance with Mandatory Disclosure.
The committees have also requested another minor change to this rule to reflect that all insurance policies, whether individual or group policies, must be disclosed. We approve this change.

New Rule 12.365Expert Witnesses

In our Family Law Opinion, we rejected the adoption of new rule 12.365, which would govern the appointment of experts by the court. We were concerned that the adoption of the rule would increase costs in family law cases. According to the committees, the rule is necessary to establish procedures to follow if experts are used. Further, to address the concerns of this Court, the committees have modified portions of the rule which implied that the appointment of experts was required by the court in certain circumstances. The committees contend that the proposed rule, as revised, may actually reduce costs to the litigants in many cases because it will clarify confusion regarding deposing experts, ex parte communications with the court, when and how a report is to be provided to the court, and the weight to be given to the report.
*211 After having considered the committees' reasons for requesting the rule, we adopt the rule as proposed.

Rule 12.491Child Support Enforcement

The committees request this Court to allow child support hearing officers to issue recommended orders establishing paternity in contested paternity cases and determining support issues for a parent with whom a child is living. This request does not apply to contested paternity cases in which a jury trial has been demanded. All parties acknowledge that a litigant can demand a jury trial in paternity cases and that hearing officers cannot conduct such proceedings. Currently, the rule limits the powers and duties of hearing officers to issues regarding child support. According to the committees, the authority of a hearing officer to hear these issues is necessary to ensure compliance with federal statutes and regulations, which require a state to have an expedited procedure for the determination of paternity and support to receive certain federal funding. See, e.g., 42 U.S.C. § 666(a)(2)(1994); 45 C.F.R. § 303.101(b)(1)(1997). We agree that the support issues to be considered by a hearing officer may be extended to include alimony enforcement issues related to an ongoing child support matter, but, for the reasons expressed below, we decline to allow hearing officers to adjudicate contested paternity cases.
As conceded by the committees, the fact that the federal law requires an expedited process does not mean that a hearing officer is required to hear paternity determinations. To the contrary, the legislation simply requires that an expedited process be provided. Clearly, an expedited process can be implemented under which an Article V judicial officer presides over paternity proceedings.
The committees, however, argue that, because a paternity proceeding is so intricately tied to support and because hearing officers can hear support issues, the hearing officers should be allowed to hear paternity issues. The committees contend that the same procedures in effect for protecting the due process rights of a litigant in child support would be in effect for paternity determinations. Consequently, the committees see no need for an initial determination regarding paternity to be conducted by an article V judicial officer. The committees also assert that a contrary holding will overload the judiciary. We disagree.
First, hearing officers are only prohibited from presiding over contested paternity cases. Hearing officers are authorized to accept "voluntary acknowledgment of paternity and support liability and stipulated agreements setting the amount of support to be paid." Fla. Fam. L.R. 12.491(e)(3).
Second, chapter 742, Florida Statutes (1997), is the exclusive remedy for establishing paternity, P.N.V. v. Washington, 654 So.2d 1274 (Fla. 2d DCA 1995), and provides that any determination of paternity also involves a determination of custody. Section 742.031, Florida Statutes (1997), governs hearings in paternity proceedings. That section, in pertinent part, provides:
(1) Hearings for the purpose of establishing or refuting the allegations of the complaint and answer shall be held in the chambers and may be restricted to persons, in addition to the parties involved and their counsel, as the judge in his or her discretion may direct. The court shall determine the issues of paternity of the child and the ability of the parents to support the child.... The court may also make a determination as to the parental responsibility and residential care and custody of the minor children in accordance with chapter 61.

(2) If a judgment of paternity contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting primary residential care and custody to the other parent without prejudice. If a paternity judgment contains no such provisions, custody shall be presumed to be with the mother.

(Emphasis added.) In essence, in making a determination of paternity, a court, of necessity, is making a custody determination; that is, even when custody is not an issue, a paternity judgment containing no explicit award of custody is granting custody to the *212 mother. We find that hearing officers have no constitutional or statutory authorization to make recommendations regarding custody and visitation, and we accordingly conclude that they are not authorized to hear contested paternity proceedings.

Rule 12.610Injunctions for Domestic and Repeat Violence

The rules committee requests that we modify several rules to clarify the procedure for serving a motion to modify a domestic or repeat violence injunction. Currently, rule 12.610(c)(6) states that such motions are governed by the rules of civil procedure; however, the civil rules do not directly address modification of such injunctions. Additionally, rule 12.610(b)(2)(C) provides that service of pleadings in cases of domestic or repeat violence other than the petition and orders granting injunctions are governed by rules 12.070 and 12.080. However, those rules specifically exclude domestic and repeat violence. We agree that clarification is needed.
Under the committee's proposal, three rules would be modified: rule 12.610(c)(6) would be amended to delete any reference to the rules of civil procedure; rule 12.610(b)(2)(C) would be amended to delete reference to rule 12.070, which governs initial service of process; and rule 12.080(a)(2) would be amended to provide that service of pleadings and papers in domestic and repeat violence cases would be governed by rule 12.610 where rule 12.080 is in conflict with rule 12.610. Under this proposal, service of a motion to modify an injunction could be by mail rather than personal service. See rule 12.080 (service of pleadings and papers after commencement of all family law actions is governed by rule 1.080, which allows service by mail). In our Family Law Opinion, we disapproved service by mail for injunction petitions due to concerns about enforcement of the injunctions and prosecution of injunction violations when service of those injunctions were by mail. Notably, a motion to modify or vacate an injunction is actually in the nature of a supplemental petition rather than a motion. See, e.g., Fla. Fam. L. Form 12.980(k) (supplemental petition for modification of injunction for protection against domestic violence or repeat violence). Under rule 12.610(a)(2), personal service by a law enforcement agency is required for all domestic and repeat violence petitions. Accordingly, we have modified the committee's proposal as set forth in appendix A to clarify that motions to modify domestic or repeat violence injunctions are supplemental petitions and that such supplemental petitions must be served in the same manner as initial petitions under rule 12.610; service of pleadings other than petitions and orders granting injunctions shall be governed by rule 12.080. Given that we are modifying the committee's proposal, we direct that this rule change be published in The Florida Bar News and we will allow comments to be filed within thirty days from the date of publication, which we will consider prior to the effective date of the change.

Rule 12.615Civil Contempt

Both of the committees ask that we adopt a rule governing civil contempt in family law proceedings given the considerable confusion that exists in this area of the law. The proposals of the two committees, however, are quite different. For example, the steering committee's proposal is limited to support, whereas the rules committee's proposal governs other matters as well. Other distinctions also are apparent, which we do not list here. We agree that a rule governing civil contempt should be adopted, but we conclude that neither of the committees' proposals is completely acceptable. As such, we have drafted a modified version that we believe addresses much of the confusion concerning contempt proceedings and is consistent with constitutional principles. To properly understand the procedures set forth in the rule as adopted, it is necessary to examine the law of contempt generally and the problems inherent in contempt proceedings in family law cases.
We have noted on numerous occasions that there are two distinct types of contempt proceedings: (1) criminal contempt proceedings, and (2) civil contempt proceedings. Bowen v. Bowen, 471 So.2d 1274 (Fla.1985); Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977).
*213 Criminal contempt is used to punish intentional violations of court orders or to vindicate the authority of the court, and "potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings." Bowen, 471 So.2d at 1277 (emphasis added). See also Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).
On the other hand, the primary purpose of a civil contempt proceeding is to compel future compliance with a court order. International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). A civil contempt sanction is coercive in nature and is avoidable through obedience. Id. at 827, 114 S.Ct. 2552.
In Bowen, we noted that a present ability to purge the contempt sanction is an essential prerequisite to incarceration for civil contempt. In Johnson v. Bednar, 573 So.2d 822 (Fla.1991), we further concluded that the necessity of a purge provision in imposing a civil contempt sanction is only required where incarceration is ordered. However, after we issued Bednar, the United States Supreme Court concluded that any coercive sanction ordered in a civil contempt proceeding must afford the contemnor an opportunity to purge; otherwise, the contempt is criminal in nature and requires that all of the constitutional due process requirements inherent in criminal cases be provided to the contemnor, including, in some cases, the right to counsel and to a jury trial. See Bagwell, 512 U.S. at 829, 114 S.Ct. 2552. Only if the fine is compensatory is it appropriate to dispense with a purge provision. Id. Thus, Bagwell effectively overruled our conclusion in Bednar that a purge provision is required only when incarceration is ordered.
In addition to discussing the distinct types of contempt, in Bowen we also set forth the procedures to be followed in civil contempt proceedings involving support in family law matters. First, an initial order directing that support or alimony be paid is entered. Because such an order is based on a finding that the alleged contemnor has the ability to pay, the initial order creates a presumption in subsequent proceedings that there is an ability to pay. Second, in a subsequent proceeding, the movant has the obligation to show that a prior order of support has been entered and that the alleged contemnor has failed to pay all or part of that support. The burden then shifts to the alleged contemnor, who must establish that he or she no longer has the ability to pay the support. The court must then evaluate the evidence and determine whether the alleged contemnor has the present ability to pay the support and has willfully refused to do so. If the court finds in the affirmative, then the court must determine the appropriate sanctions to obtain compliance. Under Bagwell, regardless of whether the sanction is incarceration, garnishment of wages, additional employment, the filing of reports, additional fines, the delivery of certain assets, the revocation of a driver's license, or other type of sanction, the court must provide the contemnor with the ability to purge the contempt; that is, if the contemnor satisfies the underlying support obligation, the sanctions must be lifted.
If the court finds that the contemnor's conduct is serious enough to warrant punishment, then the appropriate remedy is a criminal contempt proceeding under which the contemnor is entitled to the appropriate due process protections available in criminal cases.
While these principles appear to be fairly straightforward, cases reflect that courts often fail to apply the principles properly.[1] Additionally, several problems frequently arise that create confusion in the application of these principles. The first is the situation in which the alleged contemnor fails to attend *214 the hearing on the movant's motion for contempt. In this situation, problems arise as to the proper procedure for determining whether the alleged contemnor has ability to pay. This situation was addressed in detail by the Fourth District Court of Appeal's well-reasoned opinion in Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997).
In Pompey, the alleged contemnor, Pompey, failed to attend the hearing on why he should not be held in contempt for failing to pay support. After the hearing, the hearing officer recommended, and the trial court approved, an order finding that Pompey was in willful contempt of court; that he had the present ability to comply; and that he was to be incarcerated for a period of 179 days unless he paid the support arrearage in the amount of $22,100 within a set period of time. Pompey failed to pay the purge amount and an order of arrest and commitment was issued. Pompey appealed, contending that there was no evidence in the record to support a finding that he had the present ability to pay the purge amount set by the court.
The district court first noted that "[t]he ability to comply is the linchpin of civil contempt." Pompey, 685 So.2d at 1013. The district court then applied our decision in Bowen, concluding that Pompey's failure to appear and failure to rebut the presumption of his ability to pay was sufficient to find that he willfully failed to pay support; however, the court concluded that some affirmative evidence of Pompey's present ability to pay was required before he could be incarcerated. Because there was no evidence of his present ability to pay, the district court found that Pompey had been wrongfully incarcerated. The court noted its lack of sympathy for recalcitrant parents who fail to pay support, but concluded that the constitutional rights of individuals required its conclusion.
In analyzing this issue, the district court suggested a procedure to ensure that the constitutional rights of alleged contemnors are protected. Under the suggested procedure, a court is allowed to issue a writ of bodily attachment for a non-appearing contemnor at a support enforcement hearing; then, when the contemnor is brought before the court, a hearing is held immediately on whether the contemnor has the present ability to pay the purge amount. Because a hearing on the contemnor's ability to pay is held immediately after the writ of bodily attachment is executed, we agree that such a procedure is constitutional and would permit the subsequent incarceration of the contemnor if a finding is made that the contemnor does have the present ability to pay the purge. Accordingly, we have provided for such a procedure in the rule.
The second situation in which problems arise is when the alleged contemnor appears and is found to be in contempt and incarceration is imposed, but the incarceration is deferred for a period of time to provide the contemnor with the opportunity to comply. Under this situation, a dilemma arises as to whether, when the contemnor fails to comply within the deferment period, a second hearing is required to reexamine whether the contemnor still has the present ability to comply.
The district courts of appeal are divided on this issue. For instance, in Haymon v. Haymon, 640 So.2d 1204 (Fla. 2d DCA 1994), the Second District Court of Appeal concluded that, even when a finding of present ability to pay already has been made, if incarceration is deferred for a period of time, the contemnor must again be brought before the court prior to incarceration to determine whether the contemnor still has the present ability to pay. Yet, in Hipschman v. Cochran, 683 So.2d 209, 212 (Fla. 4th DCA 1996), the Fourth District Court of Appeal concluded that, so long as a trial court has already determined that a contemnor has the ability to purge within a short time frame, "due process does not automatically require a second hearing before arrest on the question of whether the contemnor has the ability to pay the purge amount." In so holding, however, the court recognized that under certain circumstances a hearing would still be required. For example, when the payments are to be made directly to the spouse, a court should hold a hearing to determine whether the contemnor has actually complied. Additionally, the court found that other circumstances may warrant a preincarceration hearing, "which we leave to future cases and to the *215 trial courts' discretion to address," id. at 213, and that nothing said by the court was "designed to prevent a contemnor from seeking an additional, preincarceration hearing." Id. at 212 n. 2.
Based on the confusion and risk of unwarranted incarceration that have occurred in similar situations, we conclude that a second hearing must always be conducted when incarceration is deferred. Simply too many contingencies may occur between the time a purge is ordered and incarceration is to begin to find to the contrary. As the Fourth District recognized, questions frequently arise as to whether the purge has in fact been satisfied. Moreover, if an asset such as stock is to be sold to pay the purge amount and the market drops, the contemnor may no longer have the present ability to pay. Further, while the contemnor may ask for such a hearing even if not routinely scheduled, many contemnors are unrepresented and are unaware that they may request a hearing. We conclude, however, that such a hearing need not be held before incarceration. As when an alleged contemnor fails to appear at the contempt hearing, immediately upon incarceration, the alleged contemnor must be brought before the court for a determination of whether the alleged contemnor continues to have the present ability to pay. In other words, when incarceration is deferred to afford an alleged contemnor the opportunity to comply and the alleged contemnor fails to comply, the court may issue a writ of bodily attachment directing that the alleged contemnor is to be brought before the court immediately upon execution of the writ.
We acknowledge and are sympathetic to the importance of ensuring that individuals who are entitled to support receive that support. We must be equally diligent, however, in protecting the rights of those obligated to pay support. As the court noted in Pompey:
The consequences of a civil contempt in the area of child support enforcement are potentially greater than those of a criminal contempt. Yet there are few procedural safeguards. Many individuals are unrepresented and may be unaware of their rightssuch as the right to periodic review of the contempt order and the right to request a hearing to demonstrate that they no longer possess the ability to pay. The consequences are even more dire for an indigent individual caught in a "Catch-22" situation: he cannot afford to hire an attorney, yet he has no right to an attorney because the court indulges in the assumption that no incarceration can take place unless the contemnor possesses the present ability to pay. See Bowen, 471 So.2d at 1278. Contempt jurisprudence must attempt to balance the need of a court to enforce its orders with the doctrine that a court's power to obtain compliance should be tempered by safeguards that ensure fundamental fairness.
Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997). We recognize that our decision today will impose the requirement of additional hearings on an already heavily burdened judicial system. However, inconvenience cannot be cited as a reason to deny an individual the due process to which the individual is entitled. Incarceration to obtain compliance with a court order may indeed be warranted when a contemnor has the ability to comply with the order and willfully refuses to do so, but incarceration for the simple failure to pay a debt is clearly prohibited. We will not allow our rules to be modified to serve as the basis for creating a debtor's prison.
The new contempt rule, which is set forth in appendix A of this opinion, modifies the committees' proposals to reflect the procedures to be followed in contempt proceedings based on the above analysis. Because of the significant changes to the proposal, we direct that this rule change be published in The Florida Bar News and we will allow comments to be filed within thirty days from the date of publication, which we will consider prior to the effective date of the change.

FORMS
Both committees have requested that we amend a number of forms. Some of the suggested changes are to correct errors in the current forms; others are simply technical or are for clarification or stylistic purposes. Some of these changes were implemented in our recent opinion, which changed *216 certain rules and forms to reflect statutory changes enacted during the last legislative session. See Amendments to the Florida Family Law Rules of Procedure, 717 So.2d 914, 23 Fla. L. Weekly S367 (Fla.1998). Additionally, pursuant to our request, the committees have submitted proposals for alternative methods of making routine amendments to the forms, which we are considering separately from this opinion. At this time, we implement only those proposed changes necessary to correct errors in the forms. The remaining proposed changes should be resubmitted during the quadrennial review process or, if an alternative method of changing the Family Law Forms is adopted by this Court, resubmitted using that alternative amendment method. The following forms and related instructions are amended by this opinion:
 Form 12.901(d), Financial Affidavit
 Form 12.901(e), Financial Affidavit
 Form 12.903(c), Supplemental Petition for
 Modification of Alimony
 Form 12.932, Certificate of Compliance
 with Mandatory Disclosure
 Form 12.941(d), Motion to Modify or Dissolve
 Temporary Injunction
 Form 12.980(b), Petition for Injunction for
 Protection Against Domestic Violence
Accordingly, we adopt the amendments to the rules and forms[2] as set forth above and as set forth in appendices A and B of this opinion, effective 12:01 a.m., February 1, 1999.
We direct that these changes be published in The Florida Bar News, and we will allow comments from interested parties to be filed within thirty days from the date of publication, which we will consider prior to the effective date of the amendments. We specifically encourage comments to be filed regarding our changes to rules 12.610 regarding service in domestic violence cases and rule 12.615 regarding contempt.
It is so ordered.
HARDING, C.J., and SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.

APPENDIX A

RULES REGULATING THE FLORIDA BAR

Rule 10-2.1. Generally
Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the State of Florida. For purposes of this chapter, it shall not constitute the unlicensed practice of law for a nonlawyer to engage in limited oral communications to assist a person in the completion of blanks on a legal form approved by the Supreme Court of Florida. Oral communications by nonlawyers are restricted to those communications reasonably necessary to elicit factual information to complete the blanks on the form and inform the person how to file the form.
Except for forms filed by the petitioner in an action for an injunction for protection against domestic or repeat violence, Tthe following language shall appear on any form completed pursuant to this rule and any individuals assisting in the completion of the form shall provide their name, business name, address, and telephone number on the form:
This form was completed with the assistance of:
 Name of Individual
 Name of Business
 Address
 Telephone Number
*217 Before a nonlawyer assists a person in the completion of a form in the manner set forth in this rule, the nonlawyer shall provide the person with a copy of a disclosure. A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the nonlawyer shall keep a copy in the person's file. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability. The disclosure shall contain the following provisions:
(Name) told me that he/she is not a lawyer and may not give legal advice or represent me in court.
(Name) told me that he/she may only help me fill out a form approved by the Supreme Court of Florida. (Name) may only help me by asking me factual questions to fill in the blanks on the form. (Name) may also tell me how to file the form.
(Name) told me that he/she is not a lawyer and cannot tell me what my rights or remedies are or how to testify in court.
_____ I can read English
_____ I cannot read English but this notice was read to me by (Name) in (Language) which I understand.
(b) Nonlawyer or Nonattorney. For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and suspended lawyers during the period of suspension.
(c) This Court or the Court. This court or the court shall mean the Supreme Court of Florida.
(d) Bar Counsel. Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any unlicensed practice of law staff counsel of The Florida Bar may serve as bar counsel or assistant bar counsel in a particular case.
(e) Respondent. A respondent is a nonlawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.
(f) Referee. A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.
(g) Standing Committee. The standing committee is the committee constituted according to the directives contained in these rules.
(h) Circuit Committee. A circuit committee is a local unlicensed practice of law circuit committee.
(i) UPL Staff Counsel. UPL staff counsel is an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director. When used in this rule, the term may include assistant UPL staff counsel.
(j) UPL. UPL is the unlicensed practice of law.
(k) The Board or Board of Governors. The board or board of governors is the board of governors of The Florida Bar.
(l) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such circuit committee. If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. UPL staff counsel will be given written notice of changes in the designated reviewing members for a particular committee.
(m) Executive Committee. The executive committee is the executive committee of the board of governors of The Florida Bar. All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may from time to time be authorized *218 by standing policies of the board of governors.

FLORIDA FAMILY LAW RULES OF PROCEDURE

RULE 12.080. SERVICE OF PLEADINGS AND PAPERS

(a) Service.
(1) Family Law Actions Generally. Service of pleadings and papers after commencement of all family law actions except domestic and repeat violence shall be as set forth in Florida Rule of Civil Procedure 1.080, except that rule 1.080 shall be expanded as set forth in subdivisions (b) and (c) to include additional requirements for service of recommended orders and for service on defaulted parties.
(2) Domestic and Repeat Violence Actions. Service of pleadings and papers regarding domestic and repeat violence actions shall be governed by Florida Family Law Rule of Procedure 12.610, where it is in conflict with this rule.
(b) Service and Preparation of Orders and Judgments. A copy of all orders or judgments involving family law matters except domestic and repeat violence shall be transmitted by the court or under its direction to all parties at the time of entry of the order or judgment. The court may require that recommended orders, orders, or judgments be prepared by a party. If the court requires that a party prepare the recommended order, order, or judgment, the party shall furnish the court with stamped, addressed envelopes to all parties for service of the recommended order, order, or judgment. The court also may require that any proposed recommended order, order, or judgment that is prepared by a party be furnished to all parties no less than 24 hours before submission to the court of the recommended order, order, or judgment.
(c) Defaulted Parties. No service need be made on parties against whom a default has been entered, except that:
(1) Pleadings asserting new or additional claims against defaulted parties shall be served in the manner provided for service of summons contained in Florida Rule of Civil Procedure 1.070.
(2) Notice of final hearings or trials and court orders shall be served on defaulted parties in the manner provided for service of pleadings and papers contained in Florida Rule of Civil Procedure 1.080.
(3) Final judgments shall be served on defaulted parties as set forth in Florida Rule of Civil Procedure 1.080(h)(2).

Commentary
1995 Adoption. This rule provides that the procedure for service shall be as set forth in Florida Rule of Civil Procedure 1.080 with the following exceptions or additions to that rule. First, subdivision (b) corresponds to and replaces subdivision (h)(1) of rule 1.080 and expands the rule to include recommended orders. Second, this rule expands items that must be served on defaulted parties to ensure that defaulted parties are at least minimally advised of the progress of the proceedings. This rule is not intended to require the furnishing of a proposed recommended order, proposed order, or proposed final judgment to a defaulted party.
Rule 12.170. Counterclaims and Crossclaims
Counterclaims and crossclaims shall be governed by Florida Rule of Civil Procedure 1.170.

RULE 12.285. MANDATORY DISCLOSURE

(a) Application.
(1) Scope. This rule shall apply to all proceedings within the scope of these rules except proceedings involving adoption, simplified dissolution, enforcement, contempt, injunctions for domestic or repeat violence, and uncontested dissolutions when the respondent is served by publication and does not file an answer. Additionally, no financial affidavit or other documents shall be required under this rule from a party seeking attorneys' fees, suit money, or costs, if the basis for the request is solely under section 57.105, Florida Statutes, or any successor statute. Except for the provisions as to financial affidavits and child support guidelines worksheets, any portion of this rule may be *219 modified by order of the court or agreement of the parties.
(2) Original and Duplicate Copies. Unless otherwise agreed by the parties or ordered by the court, copies of documents required under this rule may be produced in lieu of originals. Originals, when available, shall be produced for inspection upon request. Parties shall not be required to serve duplicates of documents previously served.
(b) Time for Production of Documents.
(1) Temporary Financial Hearings. Any document required under this rule in any temporary financial relief proceeding shall be served on the other party for inspection and copying as follows.
(A) The party seeking relief shall serve the required documents on the other party with the notice of temporary financial hearing, unless the documents have been served under subdivision (b)(2) of this rule.
(B) The responding party shall serve the required documents on the party seeking relief on or before 5:00 p.m., 2 business days before the day of the temporary financial hearing if served by delivery or 7 days before the day of the temporary financial hearing if served by mail, unless the documents have been received previously by the party seeking relief under subdivision (b)(2) of this rule. A responding party shall be given no less than 12 days to serve the documents required under this rule, unless otherwise ordered by the court. If the 45-day period for exchange of documents provided for in subdivision (b)(2) of this rule will occur before the expiration of the 12 days, the provisions of subdivision (b)(2) control.
(2) Initial and Supplemental Proceedings. Any document required under this rule for any initial or supplemental proceeding shall be served on the other party for inspection and copying within 45 days of service of the initial pleading on the respondent.
(c) Disclosure Requirements for Temporary Financial Relief. In any proceeding for temporary financial relief heard within 45 days of the service of the initial pleading or within any extension of the time for complying with mandatory disclosure granted by the court or agreed to by the parties, the following documents shall be served on the other party:
(1) A financial affidavit in substantial conformity with Family Law Form 12.901(d) if the party's gross annual income is less than $50,000, or Family Law Form 12.901(e) if the party's gross annual income is equal to or more than $50,000. This requirement cannot be waived by the parties. The affidavit must also must be filed with the court.
(2) A Child Support Guidelines Worksheet in substantial conformity with Family Law Form 12.901(g), if the case involves child support.
(32) All federal and state income tax returns, gift tax returns, and intangible personal property tax returns filed by the party or on the party's behalf for the past year. A party may file a transcript of the tax return as provided by Internal Revenue Service Form 4506 in lieu of his or her individual federal income tax return for purposes of a temporary hearing.
(43) IRS forms W-2, 1099, and K-1 for the past year, if the income tax return for that year has not been prepared.
(54) Pay stubs or other evidence of earned income for the 3 months prior to service of the financial affidavit.
(d) Parties' Disclosure Requirements for Initial or Supplement Proceedings. A party shall serve the following documents in any proceeding for an initial or supplemental request for permanent financial relief, including, but not limited to, a request for child support, alimony, equitable distribution of assets or debts, or attorneys' fees, suit money, or costs:
(1) A financial affidavit in substantial conformity with Family Law Form 12.901(d) if the party's gross annual income is less than $50,000, or Family Law Form 12.901(e) if the party's gross annual income is equal to or more than $50,000, which requirement cannot be waived by the parties. The financial affidavits also must be filed with the court. A party may request, by using the Standard Family Law Interrogatories, or the court on its own motion may order, a party *220 whose gross annual income is less than $50,000 to complete Family Law Form 12.901(e).
(2) A Child Support Guidelines Worksheet in substantial conformity with Family Law Form 12.901(g), if the case involves child support.
(32) All federal and state income tax returns, gift tax returns, and intangible personal property tax returns filed by the party or on the party's behalf for the past 3 years.
(43) IRS forms W-2, 1099, and K-1 for the past year, if the income tax return for that year has not been prepared.
(54) Pay stubs or other evidence of earned income for the 3 months prior to service of the financial affidavit.
(65) A statement by the producing party identifying the amount and source of all income received from any source during the 3 months preceding the service of the financial affidavit required by this rule if not reflected on the pay stubs produced.
(76) All loan applications and financial statements prepared or used within the 12 months preceding service of that party's financial affidavit required by this rule, whether for the purpose of obtaining or attempting to obtain credit or for any other purpose.
(87) All deeds within the last 3 years, all promissory notes within the last 12 months, and all present leases, in which the party owns or owned an interest, whether held in the party's name individually, in the party's name jointly with any other person or entity, in the party's name as trustee or guardian for any other person, or in someone else's name on the party's behalf.
(98) All periodic statements from the last 3 months for all checking accounts, and from the last 12 months for all other accounts (for example, savings accounts, money market funds, certificates of deposit, etc.), regardless of whether or not the account has been closed, including those held in the party's name individually, in the party's name jointly with any other person or entity, in the party's name as trustee or guardian for any other person, or in someone else's name on the party's behalf.
(109) All brokerage account statements in which either party to this action held within the last 12 months or holds an interest including those held in the party's name individually, in the party's name jointly with any person or entity, in the party's name as trustee or guardian for any other person, or in someone else's name on the party's behalf.
(1110) The most recent statement for any profit sharing, retirement, deferred compensation, or pension plan (for example, IRA, 401(k), 403(b), SEP, KEOGH, or other similar account) in which the party is a participant or alternate payee and the summary plan description for any retirement, profit sharing, or pension plan in which the party is a participant or an alternate payee. (The summary plan description must be furnished to the party on request by the plan administrator as required by 29 U.S.C. § 1024(b)(4).)
(1211) The declarations page, the last periodic statement, and the certificate for any group insurance for all life insurance policies insuring the party's life or the life of the party's spouse, whether group insurance or otherwise, and all current health and dental insurance cards covering either of the parties and/or their dependent children.
(1312) Corporate, partnership, and trust tax returns for the last 3 tax years if the party has an ownership or interest in a corporation, partnership, or trust greater than or equal to 30%.
(1413) All promissory notes for the last 12 months, all credit card and charge account statements and other records showing the party's indebtedness as of the date of the filing of this action and for the last 3 months, and all present lease agreements, whether owed in the party's name individually, in the party's name jointly with any other person or entity, in the party's name as trustee or guardian for any other person, or in someone else's name on the party's behalf.
(1514) All written premarital or marital agreements entered into at any time between the parties to this marriage, whether before or during the marriage. Additionally, in any modification proceeding, each party shall serve on the opposing party all written agreements entered into between them at *221 any time since the order to be modified was entered.
(1615) All documents and tangible evidence supporting the producing party's claim of special equity or nonmarital status of an asset or debt for the time period from the date of acquisition of the asset or debt to the date of production or from the date of marriage, if based on premarital acquisition.
(1716) Any court orders directing a party to pay or receive spousal or child support.
(e) Duty to Supplement Disclosure; Amended Financial Affidavit.
(1) Parties have a continuing duty to supplement documents described in this rule, including financial affidavits, whenever a material change in their financial status occurs.
(2) If an amended financial affidavit or an amendment to a financial affidavit is filed, the amending party also shall serve any subsequently discovered or acquired documents supporting the amendments to the financial affidavit.
(f) Sanctions. Any document to be produced under this rule that is served on the opposing party fewer than 24 hours before a nonfinal hearing or in violation of the court's pretrial order shall not be admissible in evidence at that hearing unless the court finds good cause for the delay. In addition, the court may impose other sanctions authorized by rule 12.380 as may be equitable under the circumstances. The court may also impose sanctions upon the offending lawyer in lieu of imposing sanctions on a party.
(g) Extensions of Time for Complying with Mandatory Disclosure. By agreement of the parties, the time for complying with mandatory disclosure may be extended. Either party also may file, at least 5 days before the due date, a motion to enlarge the time for complying with mandatory disclosure. The court shall grant the request for good cause shown.
(h) Objections to Mandatory Automatic Disclosure. Objections to the mandatory automatic disclosure required by this rule shall be served in writing at least 5 days prior to the due date for the disclosure or the objections shall be deemed waived. The filing of a timely objection, with a notice of hearing on the objection, automatically stays mandatory disclosure for those matters within the scope of the objection. For good cause shown, the court may extend the time for the filing of an objection or permit the filing of an otherwise untimely objection. The court shall impose sanctions for the filing of meritless or frivolous objections.
(i) Certificate of Compliance. All parties subject to automatic mandatory disclosure shall file with the court a certificate of compliance, Florida Family Law Form 12.932, identifying with particularity the documents which have been delivered and certifying the date of service of the financial affidavit and documents by that party.
(j) Child Support Guidelines Worksheet. If the case involves child support, the parties shall file with the court at or prior to a hearing to establish or modify child support a Child Support Guidelines Worksheet in substantial conformity with Florida Family Law Form 12.901(g). This requirement cannot be waived by the parties.
(jk) Place of Production.
(1) Unless otherwise agreed by the parties or ordered by the court, all production required by this rule shall take place in the county where the action is pending and in the office of the attorney for the party receiving production. Unless otherwise agreed by the parties or ordered by the court, if a party does not have an attorney or if the attorney does not have an office in the county where the action is pending, production shall take place in the county where the action is pending at a place designated in writing by the party receiving production, served at least 5 days before the due date for production.
(2) If venue is contested, on motion by a party the court shall designate the place where production will occur pending determination of the venue issue.
(kl) Failure of Defaulted Party to Comply. Nothing in this rule shall be deemed to preclude the entry of a final judgment when a party in default has failed to comply with this rule.

*222 Commentary
1995 Adoption. This rule creates a procedure for automatic financial disclosure in family law cases. By requiring production at an early stage in the proceedings, it is hoped that the expense of litigation will be minimized. See Dralus v. Dralus, 627 So.2d 505 (Fla. 2d DCA 1993); Wrona v. Wrona, 592 So.2d 694 (Fla. 2d DCA 1991); and Katz v. Katz, 505 So.2d 25 (Fla. 4th DCA 1987). A limited number of requirements have been placed upon parties making and spending less than $50,000 annually unless otherwise ordered by the court. In cases where the income or expenses of a party are equal to or exceed $50,000 annually, the requirements are much greater. Except for the provisions as to financial affidavits, other than as set forth in subdivision (k), any portion of this rule may be modified by agreement of the parties or by order of the court. For instance, upon the request of any party or on the court's own motion, the court may order that the parties to the proceeding comply with some or all of the automatic mandatory disclosure provisions of this rule even though the parties do not meet the income requirements set forth in subdivision (d). Additionally, the court may, on the motion of a party or on its own motion, limit the disclosure requirements in this rule should it find good cause for doing So.

Committee Notes
1998 Amendment. If one party has not provided necessary financial information for the other party to complete a child support guidelines worksheet, a good faith estimate should be made.
1997 Amendment. Except for the form of financial affidavit used, mandatory disclosure is made the same for all parties subject to the rule, regardless of income. The amount of information required to be disclosed is increased for parties in the under-$50,000 category and decreased for parties in the $50,000-or-over category. The standard family law interrogatories are no longer mandatory, and their answers are designed to be supplemental and not duplicative of information contained in the financial affidavits.
RULE 12.365. EXPERT WITNESSES
(a) Application. The procedural requirements in this rule shall apply whenever an expert is appointed by the court or retained by a party. This rule applies to all experts including, but not limited to, medical, psychological, social, financial, vocational, and economic experts. Where in conflict, this rule shall supersede Florida Rule of Civil Procedure 1.360.
(b) Communication with Court by Expert. No expert may communicate with the court without prior notice to the parties and their attorneys, who shall be afforded the opportunity to be present and heard during the communication between the expert and the court. A request for communication with the court may be conveyed informally by letter or telephone. Further communication with the court, which may be conducted informally, shall be done only with notice to all parties.
(c) Opinion of Expert Appointed by the Court.
(1) Service. Any opinion of an expert appointed by the court shall be served in writing on the parties within 10 days of the formation of the opinion, but not less than 30 days before trial.
(2) Discovery. The parties shall be permitted a reasonable opportunity to conduct discovery after service of the expert's opinion including, but not limited to, the right to take the deposition of the expert.
(3) Submission to Court. No expert opinion shall be filed with or otherwise submitted to the court until the opinion is introduced as evidence at a hearing with notice to all parties.
(d) Opinion of Expert Not Appointed by Court.
(1) Service. Any opinion of an expert retained by a party who is expected to testify at trial shall be served in writing on all other parties within 10 days of formation of the opinion, but not less than 30 days before trial.
(2) Discovery. The parties shall be permitted a reasonable opportunity to conduct discovery after service of the expert's opinion *223 including, but not limited to, the right to take the deposition of the expert.
(3) Submission to Court. No expert opinion shall be filed with or otherwise submitted to the court until the opinion is introduced as evidence at a hearing with notice to all parties.
(e) Use of Evidence. The court shall not entertain any presumption in favor of a court-appointed expert's opinion. Any opinion by an expert may be entered into evidence on the court's own motion or the motion of any party in a manner consistent with the rules of evidence, subject to cross-examination by the parties.
(f) Evaluation of Minor Child. This rule shall not apply to any evaluation of a minor child under rule 12.363.

Committee Note
1998 Adoption. This rule establishes the procedure to be followed for the use of experts. The District Court of Appeal, Fourth District, has encouraged the use of court-appointed experts to review financial information and reduce the cost of divorce litigation. Tomaino v. Tomaino, 629 So.2d 874 (Fla. 4th DCA 1993). Additionally, section 90.615(1), Florida Statutes, allows the court to call witnesses whom all parties may cross-examine. See also Fed.R.Evid. 706 (trial courts have authority to appoint expert witnesses).
RULE 12.491. CHILD SUPPORT ENFORCEMENT
(a) Limited Application. This rule shall be effective only when specifically invoked by administrative order of the chief justice for use in a particular county or circuit.
(b) Scope. This rule shall apply to proceedings for
(1) the establishment, enforcement, or modification of child support, or
(2) the enforcement of any support order for the custodial parent in conjunction with an ongoing child support or child support arrearage order,
wherein thewhen a party seeking support is receiving services pursuant to Title IV-D of the Social Security Act (42 U.S.C. §§ 651 et seq.) and to non-Title IV-D proceedings upon administrative order of the chief justice.
(c) Support Enforcement Hearing Officers. The chief judge of each judicial circuit shall appoint such number of support enforcement hearing officers for the circuit or any county within the circuit as are necessary to expeditiously perform the duties prescribed by this rule. A hearing officer shall be a member of The Florida Bar unless waived by the chief justice and shall serve at the pleasure of the chief judge and a majority of the circuit judges in the circuit.
(d) Referral. Upon the filing of a cause of action or other proceeding for the establishment, enforcement, or modification of support to which this rule applies, the court or clerk of the circuit court shall refer such proceedings to a support enforcement hearing officer, pursuant to procedures to be established by administrative order of the chief judge.
(e) General Powers and Duties. The support enforcement hearing officer shall be empowered to issue process, administer oaths, require the production of documents, and conduct hearings for the purpose of taking evidence. A support enforcement hearing officer does not have the authority to hear contested paternity cases. Upon the receipt of a support proceeding, the support enforcement hearing officer shall:
(1) assign a time and place for an appropriate hearing and give notice to each of the parties as may be required by law;
(2) take testimony and establish a record, which record may be by electronic means as provided by Florida Rule of Judicial Administration 2.070(d);
(3) accept voluntary acknowledgment of paternity and support liability and stipulated agreements setting the amount of support to be paid; and
(4) evaluate the evidence and promptly make a recommended order to the court. Such order shall set forth findings of fact.
(f) Entry of Order and Relief from Order. Upon receipt of a recommended order, the court shall review the recommended order and shall enter an order promptly unless *224 good cause appears to amend the order, conduct further proceedings, or refer the matter back to the hearing officer to conduct further proceedings. Any party affected by the order may move to vacate the order by filing a motion to vacate within 10 days from the date of entry. Any party may file a cross-motion to vacate within 5 days of service of a motion to vacate, provided, however, that the filing of a cross-motion to vacate shall not delay the hearing on the motion to vacate unless good cause is shown. A motion to vacate the order shall be heard within 10 days after the movant applies for hearing on the motion.
(g) Modification of Order. Any party affected by the order may move to modify the order at any time.
(h) Record. For the purpose of hearing on a motion to vacate, a record, substantially in conformity with this rule, shall be provided to the court by the party seeking review.
(1) The record shall consist of the court file, including the transcript of the proceedings before the hearing officer, if filed, and all depositions and evidence presented to the hearing officer.
(2) The transcript of all relevant proceedings shall be delivered to the judge and provided to opposing counsel not less than 48 hours before the hearing on the motion to vacate. If less than a full transcript of the proceedings taken before the hearing officer is ordered prepared by the moving party, that party shall promptly file a notice setting forth the portions of the transcript that have been ordered. The responding party shall be permitted to designate any additional portions of the transcript necessary to the adjudication of the issues raised in the motion to vacate or cross-motion to vacate.
(3) The cost of the original and all copies of the transcript of the proceedings shall be borne initially by the party seeking review, subject to appropriate assessment of suit monies. Should any portion of the transcript be required as a result of a designation filed by the responding party, the party making the designation shall bear the initial cost of the additional transcript.

Committee Note
1998 Amendment. This rule shall not apply to proceedings to establish or modify alimony.

Commentary
1995 Adoption. Previously, this rule was contained in Florida Rule of Civil Procedure 1.491. The new rule is substantially the same as previous rule 1.491, with the following additions.
It is intended that any administrative order issued by the chief justice of the Florida Supreme Court under rule 1.491(a) shall remain in full force and effect as though such order was rendered under this rule until changed by order of that same court.
Subdivision (e) now makes clear that contested paternity cases are not to be heard by support enforcement hearing officers.
Subdivision (h) has been added to provide requirements for a record.
The following notes and commentary have been carried forward from rule 1.491.
1988 Adoption. Title: The terminology "hearing officer" is used rather than "master" to avoid confusion or conflict with rule 1.490.
Subdivision (a): The rule is intended as a fall back mechanism to be used by the chief justice as the need may arise.
Subdivision (b): The expedited process provisions of the applicable federal regulations apply only to matters which fall within the purview of Title IV-D. The committee recognizes, however, that the use of hearing officers could provide a useful case flow management tool in non-Title IV-D support proceedings.
It is contemplated that a circuit could make application to the chief justice for expansion of the scope of the rule upon a showing of necessity and good cause. It is the position of the representative of the Family Law Section of The Florida Bar that reference of non-Title IV-D proceedings should require the consent of the parties as is required by rule 1.490(c).
Subdivision (c): It is the position of the committee that hearing officers should be *225 members of the Bar in that jurisdictional and other legal issues are likely to arise in proceedings of this nature. The waiver provision is directed to small counties in which it may be difficult or impossible to find a lawyer willing to serve and to such other special circumstances as may be determined by the chief justice.
Subdivision (d): This paragraph recognizes that the mechanics of reference and operation of a program are best determined at the local level.
Subdivision (e): This paragraph is intended to empower the hearing officer to fully carry out his or her responsibilities without becoming overly complicated. The authority to enter defaults which is referred to in the federal regulations is omitted, the committee feeling that the subject matter is fully and adequately covered by rule 1.500.
The authority to accept voluntary acknowledgments of paternity is included at the request of the Department of Health and Rehabilitative Services. Findings of fact are included in the recommended order to provide the judge to whom the order is referred basic information relating to the subject matter.
Subdivision (f): Expedited process is intended to eliminate or minimize delays which are perceived to exist in the normal processing of cases. This paragraph is intended to require the prompt entry of an order and to guarantee due process to the obligee.
General Note: This proposed rule, in substantially the same form, was circulated to each of the chief judges for comment. Five responses were received. Two responding endorsed the procedure, and 3 responding felt that any rule of this kind would be inappropriate. The committee did not address the question of funding, which included not only salaries of hearing officers and support personnel, but also capital outlay for furniture, fixtures, equipment and space, and normal operating costs. The committee recognizes that the operational costs of such programs may be substantial and recommends that this matter be addressed by an appropriate body.
RULE 12.610. INJUNCTIONS FOR DOMESTIC AND REPEAT VIOLENCE
(a) Application. This rule shall apply only to temporary and permanent injunctions for protection against domestic violence and temporary and permanent injunctions for protection against repeat violence. All other injunctive relief sought in cases to which the Family Law Rules apply shall be governed by Florida Rule of Civil Procedure 1.610.
(b) Petitions.

(1) Requirements for Use.
(A) Domestic Violence. Any person may file a petition for an injunction for protection against domestic violence if they certify under oath that
(i) the party filing the injunction and the party against whom the injunction is sought are spouses, former spouses, persons related by blood or marriage, persons who are presently residing together as if a family or who have resided together in the past as if a family, or persons who have a child in common regardless of whether they have been married or have resided together at any time;
(ii) the party filing the petition was the victim of, or has reasonable cause to believe he or she is in imminent danger of becoming the victim of an assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death perpetrated by the party against whom the injunction is sought; and
(iii) the specific facts and circumstances upon the basis of which relief is sought are true.
(B) Repeat Violence. Any person may file a petition for an injunction for protection against repeat violence if they certify under oath that
(i) two incidents of violence, defined as any assault, battery, sexual battery or stalking, one of which must have occurred within 6 months of the filing of the petition, have been committed by the person against whom the injunction is sought against the *226 petitioner or the petitioner's immediate family member; and
(ii) the specific facts and circumstances upon the basis of which relief is sought are true.

(2) Service of Petitions.
(A) Domestic Violence. Personal service by a law enforcement agency is required. The clerk of the court shall furnish a copy of the petition for an injunction for protection against domestic violence, financial affidavit (if support is sought), Uniform Child Custody Jurisdiction Act affidavit (if custody is sought), temporary injunction (if one has been entered), and notice of hearing to the appropriate sheriff or law enforcement agency of the county where the respondent resides or can be found for expeditious service of process.
(B) Repeat Violence. Personal service by a law enforcement agency is required. The clerk of the court shall furnish a copy of the petition for an injunction for protection against repeat violence, temporary injunction (if one has been entered), and notice of hearing to the appropriate sheriff or law enforcement agency of the county where the respondent resides or can be found for expeditious service of process.
(C) Additional Documents. Service of pleadings in cases of domestic or repeat violence other than the petitions, supplemental petitions, and orders granting injunctions shall be governed by rules12.070 and 12.080.
(3) Consideration by Court. Upon the filing of a petition, the court shall set a hearing to be held at the earliest possible time. A denial of a petition for an ex parte injunction shall be by written order noting the legal grounds for denial. When the only ground for denial is no appearance of an immediate and present danger of domestic violence, the court shall set a full hearing on the petition for injunction with notice at the earliest possible time. Nothing herein affects a petitioner's right to promptly amend any petition, or otherwise be heard in person on any petition consistent with these rules.

(4) Forms.
(A) Provision of Forms. The clerk of the court or family or domestic/repeat violence intake personnel shall provide simplified forms, including instructions for completion, for any person whose circumstances meet the requirements of this rule and shall assist the petitioner in obtaining an injunction for protection against domestic or repeat violence as provided by law.
(B) Confidential Filing of Address. A petitioner's address may be furnished to the court in a confidential filing separate from a petition or other form if, for safety reasons, a petitioner believes that the address should be concealed. The ultimate determination of a need for confidentiality must be made by the court as provided in Florida Rule of Judicial Administration 2.051.
(c) Orders of Injunction.

(1) Consideration by Court.
(A) Temporary Injunction. For the injunction for protection to be issued ex parte, it must appear to the court that an immediate and present danger of domestic or repeat violence exists. In an ex parte hearing for the purpose of obtaining an ex parte temporary injunction, the court may limit the evidence to the verified pleadings or affidavits or may receive additional testimony under oath if necessary for a determination of whether an immediate and present danger of domestic or repeat violence exists. If the respondent appears at the hearing or has received reasonable notice of the hearing, the court may hold a hearing on the petition.
(B) Permanent Injunction. A full evidentiary hearing shall be conducted.

(2) Issuing of Injunction.
(A) Standardized Forms. The temporary and permanent injunction forms in these rules for repeat and domestic violence injunctions shall be the forms used in the issuance of injunctions under chapters 741 and 784, Florida Statutes. Additional provisions, not inconsistent with the standardized portions of those forms, may be added to the special provisions section of the temporary and permanent injunction forms on the written approval of the chief judge of the circuit. Copies of such additional provisions shall be sent to the Chief Justice, the chair of the *227 Family Law Rules Committee of The Florida Bar, the chair of the Family Courts Steering Committee, and the chair of The Governor's Task Force on Domestic and Sexual Violence.
(B) Bond. No bond shall be required by the court for the entry of an injunction for protection against domestic or repeat violence. The clerk of the court shall provide the parties with sufficient certified copies of the order of injunction for service.

(3) Service of Injunctions.
(A) Temporary Injunction. A temporary injunction for protection against domestic or repeat violence must be personally served. When the respondent has been served previously with the temporary injunction and has failed to appear at the initial hearing on the temporary injunction, any subsequent pleadings seeking an extension of time may be served on the respondent by the clerk of the court by certified mail in lieu of personal service by a law enforcement officer. If the temporary injunction was issued after a hearing because the respondent was present at the hearing or had reasonable notice of the hearing, the injunction may be served in the manner provided for a permanent injunction.
(B) Permanent Injunction.
(i) Party Present at Hearing. The parties may acknowledge receipt of the permanent injunction for protection against domestic or repeat violence in writing on the face of the original order. If a party is present at the hearing and that party fails or refuses to acknowledge the receipt of a certified copy of the injunction, the clerk shall cause the order to be served by mailing certified copies of the injunction to the parties who were present at hearing at the last known address of each party. Service by mail is complete upon mailing. When an order is served pursuant to this subdivision, the clerk shall prepare a written certification to be placed in the court file specifying the time, date, and method of service and within 24 hours shall forward a copy of the injunction and the clerk's affidavit of service to the sheriff with jurisdiction over the residence of the petitioner. This procedure applies to service of orders to modify or vacate injunctions for protection against domestic or repeat violence.
(ii) Party not Present at Hearing. Within 24 hours after the court issues, continues, modifies, or vacates an injunction for protection against domestic or repeat violence, the clerk shall forward a copy of the injunction to the sheriff with jurisdiction over the residence of the petitioner for service.

(4) Duration.
(A) Temporary Injunction. Any temporary injunction shall be effective for a fixed period not to exceed 15 days. A full hearing shall be set for a date no later than the date when the temporary injunction ceases to be effective. The court may grant a continuance of the temporary injunction and of the full hearing for good cause shown by any party, or upon its own motion for good cause, including failure to obtain service.
(B) Permanent Injunction. Any relief granted by an injunction for protection against domestic or repeat violence shall be granted for a fixed period or until further order of court. Such relief may be granted in addition to other civil and criminal remedies. Upon petition of the victim, the court may extend the injunction for successive periods or until further order of court. Broad discretion resides with the court to grant an extension after considering the circumstances. No specific allegations are required.
(5) Enforcement. The court may enforce violations of an injunction for protection against domestic or repeat violence in civil contempt proceedings, which are governed by rule 12.570, or in criminal contempt proceedings, which are governed by Florid Rule of Criminal Procedure 3.840, or, if the violation meets the statutory criteria, it may be prosecuted as a crime under Florida Statutes.
(6) Motion Supplemental Petition to Modify or Vacate Injunction. The petitioner or respondent may make a motion to file a supplemental petition with the court to modify or vacate an injunction at any time. Motions to modify or vacate an injunction shall be governed by the Florida Rules of *228 Civil Proceduro.Service of supplemental petitions to modify or vacate injunctions shall be governed by subdivision 12.610(b)(2) of this rule.
(7) Forms. The clerk of the court or family or domestic/repeat violence intake personnel shall provide simplified forms including instructions for completion, for the persons whose circumstances meet the requirements of this rule and shall assist in the preparation of the affidavit in support of the violation of an order of injunction for protection against domestic or repeat violence.

Commentary
1995 Adoption. A cause of action for an injunction for protection against domestic violence and repeat violence has been created by section 741.30, Florida Statutes (Supp. 1994) (modified by chapter 95-195, Laws of Florida), and section 784.046, Florida Statutes (Supp.1994), respectively. This rule implements those provisions and is intended to be consistent with the procedures set out in those provisions except as indicated in this commentary. To the extent a domestic or repeat violence matter becomes criminal or is to be enforced by direct or indirect criminal contempt, the appropriate Florida Rules of Criminal Procedure will apply.
The facts and circumstances to be alleged under subdivision 12.610(b)(1)(A) include those set forth in Florida Family Law Form 12.980(b). An injunction for protection against domestic or repeat violence may be sought whether or not any other cause of action is currently pending between the parties. However, the pendency of any such cause of action must be alleged in the petition. The relief the court may grant in a temporary or permanent injunction against domestic violence is set forth in section 741.30(6).
The facts and circumstances to be alleged under subdivision (b)(1)(B) include those set forth in Florida Family Law Form 12.980(d). The relief the court may grant in a temporary or permanent injunction against repeat violence is set forth in section 784.046(7), Florida Statutes.
Subdivision (b)(4) expands sections 741.30(2)(c)1 and (2)(c)2, Florida Statutes, to provide that the responsibility to assist the petitioner may be assigned not only to the clerk of court but also to the appropriate intake unit of the court. Family Law Form 12.980(b) provides the form for a petition for injunction against domestic violence. If the custody of a child is at issue, a Uniform Child Custody Jurisdiction Act affidavit must be provided and completed in conformity with Family Law Form 12.901(f). If alimony or child support is sought a Financial Affidavit must be provided and completed in conformity with Family Law Form 12.901(d) or 12.901(e).
Subdivision (c)(1)(A) expands chapter 95-195, Laws of Florida, and section 784.046(6)(a), Florida Statutes, to make the limitation of evidence presented at an ex parte hearing permissive rather than mandatory given the due process concerns raised by the statutory restrictions on the taking of evidence.
Unlike traditional injunctions, under subdivision (c)(2), no bond will be required for the issuance of injunctions for protection against domestic or repeat violence. This provision is consistent with the statutes except that, unlike the statutes, it does not set a precise number of copies to be provided for service.
Subdivision (c)(3)(A) makes the procedure for service of a temporary order of injunction for protection against domestic violence and repeat violence consistent. This is intended to replace the differing requirements contained in sections 741.30(7)(b)3 and (7)(c)1 and 784.046(8)(a)1, Florida Statutes.
Subdivision (c)(3)(B) makes the procedure for service of a permanent order of injunction for protection against domestic violence and repeat violence consistent. This is intended to replace the differing requirements contained in sections 741.30(7)(a)3 and (7)(c)1 and 784.046(8)(c)1, Florida Statutes, and to specifically clarify that service of the permanent injunction by mail is only effective upon a party who is present at the hearing which resulted in the issuance of the injunction.
Subdivision (c)(4)(A) restates sections 741.30(5)(c) and 784.046(6)(c), Florida Statutes, with some expansion. This subdivision allows the court upon its own motion to *229 extend the protection of the temporary injunction for protection against domestic or repeat violence for good cause shown, which shall include, but not be limited to, failure to obtain service. This subdivision also makes the procedures in cases of domestic and repeat violence identical, resolving the inconsistencies in the statutes.
Subdivision (c)(4)(B) makes the procedures in cases of domestic and repeat violence identical, resolving inconsistencies in the statutes. As stated in section 741.30(1)(c), Florida Statutes, in the event a subsequent cause of action is filed under chapter 61, Florida Statutes, any orders entered therein shall take precedence over any inconsistent provisions of an injunction for protection against domestic violence which addresses matters governed by chapter 61, Florida Statutes.
Subdivision (c)(5) implements a number of statutes governing enforcement of injunctions against domestic or repeat violence. It is intended by these rules that procedures in cases of domestic and repeat violence be identical to resolve inconsistencies in the statutes. As such, the procedures set out in section 741.31(1), Florida Statutes, are to be followed for violations of injunctions for protection of both domestic and repeat violence. Pursuant to that statute, the petitioner may contact the clerk of the the circuit court of the county in which the violation is alleged to have occurred to obtain information regarding enforcement.
Subdivision (c)(7) expands sections 741.30(2)(c)1 and (2)(c)2, Florida Statutes, to provide that the responsibility to assist a petitioner may not only be assigned to the clerk of court but also to the appropriate intake unit of the court. This subdivision makes the procedures in cases of domestic and cases of repeat violence identical to resolve inconsistencies in the statutes.

Committee Note
1997 Amendment. This change mandates use of the injunction forms provided with these rules to give law enforcement a standardized form to assist in enforcement of injunctions. In order to address local concerns, circuits may add special provisions not inconsistent with the mandatory portions.
RULE 12.615. CIVIL CONTEMPT IN SUPPORT MATTERS
(a) Applicability. This rule governs civil contempt proceedings in support matters related to family law cases. The use of civil contempt sanctions under this rule shall be limited to those used to compel compliance with a court order. Contempt sanctions intended to punish an offender or to vindicate the authority of the court are criminal in nature and are governed by Florida Rules of Criminal Procedure 3.830 and 3.840.
(b) Motion and Notice. Civil contempt may be initiated by motion. No civil contempt may be imposed without notice to the alleged contemnor and without providing the alleged contemnor with an opportunity to be heard. The civil contempt motion and notice of hearing may be served by mail provided notice by mail is reasonably calculated to apprise the alleged contemnor of the pendency of the proceedings. The notice must specify the time and place of the hearing and the motion must recite the essential facts constituting the acts alleged to be contemptuous.
(c) Hearing. In any civil contempt hearing, after the court makes an express finding that the alleged contemnor had notice of the motion and hearing:
(1) the court shall determine whether the movant has established that a prior order directing payment of support was entered, that the order was based on a finding that the alleged contemnor had the ability to pay the support ordered, and that the alleged contemnor has failed to pay all or part of the support set forth in the prior order; and
(2) if the court finds the movant has established all of the requirements in subdivision 12.615(c)(1) of this rule, the court shall,
(i) if the alleged contemnor is present, determine whether the alleged contemnor has established that the alleged contemnor no longer has the present ability to pay support. If the court finds that the alleged contemnor has the present ability to pay support, the court is to determine whether the failure to pay such support is willful;
(ii) if the alleged contemnor fails to appear, issue a writ of bodily attachment and *230 direct that, upon execution of the writ of bodily attachment, the alleged contemnor be immediately brought before the court for a hearing on whether the alleged contemnor has the present ability to pay support and, if so, whether the failure to pay such support is willful.
(d) Order and Sanctions. After hearing the testimony and evidence presented by each party, the court shall enter a written order granting or denying the motion for contempt.
(1) An order finding the alleged contemnor to be in contempt shall contain a finding that a prior order of support was entered, that the alleged contemnor has failed to pay part or all of the support ordered, that the alleged contemnor has the present ability to pay support, and that the alleged contemnor has willfully failed to comply with the prior court order. The order shall contain a recital of the facts on which these findings are based.
(2) If the court grants the motion for contempt, the court may impose appropriate sanctions to obtain compliance with the order including incarceration, attorneys' fees, suit money and costs, compensatory or coercive fines, and any other coercive sanction or relief permitted by law provided the order includes a purge provision as set forth in subdivision 12.615(e) of this rule.
(e) Purge. If the court orders incarceration, a coercive fine, or any other coercive sanction for failure to comply with a prior support order, the court shall set conditions for purge of the contempt, based on the contemnor's present ability to comply. The court shall include in its order a separate affirmative finding that the contemnor has the present ability to comply with the purge and the factual basis for that finding. The court may grant the contemnor a reasonable time to comply with the purge conditions. If the court orders incarceration but defers incarceration to allow the contemnor a reasonable time to comply with the purge conditions, and the contemnor fails to comply within the time provided, then, upon incarceration, the contemnor must be brought immediately before the court for a determination of whether the contemnor continues to have the present ability to pay the purge.
(f) Review after Incarceration. Notwithstanding the provisions of this rule, at any time after a contemnor is incarcerated, the court on its own motion or motion of any party may review the contemnor's present ability to comply with the purge condition and the duration of incarceration and modify any prior orders.

Commentary
1998 Adoption. This rule is limited to civil contempt proceedings. Should a court wish to impose sanctions for criminal contempt, the court must refer to Florida Criminal Rules of Procedure 3.830 and 3.840 and must provide the alleged contemnor with all of the constitutional due process protections afforded to criminal defendants. This rule is created to assist the trial courts in ensuring that the due process rights of alleged contemnors are protected. The contempt notice in Form 1.982, Rules of Civil Procedure, may be used to initiate civil contempt proceedings under this rule.

APPENDIX B

INSTRUCTIONS FOR FLORIDA FAMILY LAW FORM 12.901(d),

FAMILY LAW FINANCIAL AFFIDAVIT (SHORT FORM)

When should this form be used?
This form should be used when you are involved in a family law case that requires a financial affidavit and your individual gross income is UNDER $50,000 per year.
This form should be typed or printed in black ink. After completing this form, you should sign the form before a notary public. You should file the original with the clerk of the circuit court in the county where the petition was filed and keep a copy for your records.

What should I do next?
A copy of this form must be mailed or hand delivered to the other party in your case, if it is not served on him or her with your initial papers. This must be accomplished within 45 days of service of the petition.

*231 Where can I look for more information?
Before proceeding, you should read "General Information for Pro Se Litigants" found at the beginning of these forms. The words that are in "bold underline" in these instructions are defined there. For further information, see rule 12.285, Florida Family Law Rules of Procedure.

Special notes ...
If this is a domestic violence case and you want to keep your address confidential for safety reasons, do not enter the address, telephone, and fax information at the bottom of this form. Instead, file Petitioner's Request for Confidential Filing of Address, Florida Family Law Form 12.980(i).
The affidavit must be completed using monthly income and expense amounts. If you are paid or your bills are due on a schedule that is not monthly, you must convert those amounts. Hints are provided below for making these conversions.

Hourly  If you are paid by the hour, you may convert your income to monthly as follows:
 Hourly amount × Hours worked per week = Weekly amount
 Weekly amount × 52 Weeks per year = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Daily  If you are paid by the day, you may convert your income to monthly as follows:
 Daily amount × Days worked per week = Weekly amount
 Weekly amount × 52 Weeks per year = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Weekly  If you are paid by the week, you may convert your income to monthly as follows:
 Weekly amount × 52 Weeks per year = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Bi-weekly  If you are paid every two weeks, you may convert your income to monthly as
 follows:
 Bi-weekly amount × 26 = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Bi-monthly  If you are paid twice per month, you may convert your income to monthly as
 follows:
 Bi-monthly amount × 2 = Monthly Amount

Expenses may be converted in the same manner.
Remember, a person who is NOT an attorney is called a nonlawyer. If a nonlawyer helps you fill out these forms, that person must give you a copy of a Disclosure from Nonlawyer, Florida Family Law Form 12.900, before he or she helps you. A nonlawyer helping you fill out these forms also must put his or her name, address, and telephone number on the bottom of the last page of every form he or she helps you complete.
 FORM 12.901(d). FAMILY LAW FINANCIAL AFFIDAVIT
 IN THE CIRCUIT COURT OF THE _________ JUDICIAL CIRCUIT,
 IN AND FOR ________ COUNTY, FLORIDA
 Case No.: _______________________
 Division: _______________________
______________________________,
 Petitioner,
 and
______________________________,
 Respondent.
 FAMILY LAW FINANCIAL AFFIDAVIT (SHORT FORM)
 (Under $50,000 Individual Gross Annual Income)
I, {full legal name} ________________________, being sworn, certify that
the following information is true:
*232
My Occupation: ____________________ Employed by: ___________________________
Business Address: __________________________________________________________
Pay rate: $ __________ every week ( ) every other week ( ) twice a month ( )
monthly ( ) other: _________________________________________________________
[] Check here if unemployed and explain on a separate sheet your efforts to find
employment.
SECTION I. PRESENT MONTHLY GROSS INCOME:
All amounts must be MONTHLY. See the instructions with this form to figure
out money amounts for anything that is NOT paid monthly. Attach more paper, if
needed. Items included under "other" should be listed separately with separate
dollar amounts.
 1. Monthly gross salary or wages 1. $______
 2. Monthly bonuses, commissions, allowances, overtime, tips, and
 similar payments 2. _______
 3. Monthly business income from sources such as self-employment,
 partnerships, close corporations, and/or independent
 contracts (gross receipts minus ordinary and necessary expenses
 required to produce income) ([] Attach sheet itemizing
 such income and expenses.) 3. _______
 4. Monthly disability benefits/SSI 4. _______
 5. Monthly Workers' Compensation 5. _______
 6. Monthly Unemployment Compensation 6. _______
 7. Monthly pension, retirement, or annuity payments 7. _______
 8. Monthly Social Security benefits 8. _______
 9. Monthly alimony actually received
 9a. From this case: $_______
 9b. From other case(s): _______ Add 9a and 9b 9. _______
10. Monthly interest and dividends 10. _______
11. Monthly rental income (gross receipts minus ordinary and
 necessary expenses required to produce income) ([] Attach
 sheet itemizing such income and expense items.) 11. _______
12. Monthly income from royalties, trusts, or estates 12. _______
13. Monthly reimbursed expenses and in-kind payments to the
 extent that they reduce personal living expenses 13. _______
14. Monthly gains derived from dealing in property (not including
 nonrecurring gains) 14. _______
 Any other income of a recurring nature (list source)
15. _____________________________________________________________ 15. _______
16. ______________________________________________________________ 16. _______
17. TOTAL PRESENT MONTHLY GROSS INCOME (Add
 lines 1-16) 17. $______
PRESENT MONTHLY DEDUCTIONS:
18. Monthly federal, state, and local income tax (corrected for
 filing status and allowable dependents and income tax liabilities)
 a. Filing Status ______
 b. Number of dependents claimed ______ 18. $______
19. Monthly FICA or self-employment taxes 19. _______
20. Monthly Medicare payments 20. _______
21. Monthly mandatory union dues 21. _______
22. Monthly mandatory retirement payments 22. _______
23. Monthly health insurance payments (including dental insurance),
 excluding portion paid for any minor children of this
 relationship 23. _______
*233
24. Monthly court-ordered child support actually paid for children
 from another relationship 24. _______
25. Monthly court-ordered alimony actually paid
 25a. from this case: $_______
 25b. from other case(s): _______ Add 25a and 25b 25. _______
26. TOTAL DEDUCTIONS ALLOWABLE
 UNDER SECTION 61.30, FLORIDA
 STATUTES (Add lines 18 through 25) TOTAL: 26. $______
PRESENT NET MONTHLY INCOME (Subtract line 26
from line 17) 27. $______
 ______
SECTION II. AVERAGE MONTHLY EXPENSES
Proposed/Estimated Expenses. If this is a dissolution of marriage case and your
expenses as listed below do not reflect what you actually pay currently, you should
write "estimate" next to each amount that is estimated.
A. HOUSEHOLD:
 Mortgage or rent $______
 Property taxes $______
 Utilities $______
 Telephone $______
 Food $______
 Meals outside home $______
 Maintenance/Repairs $______
 Other: ________________________ $______
B. AUTOMOBILE
 Gasoline $______
 Repairs $______
 Insurance $______
C. CHILD(REN)'S EXPENSES
 Day care $______
 Lunch money $______
 Clothing $______
 Grooming $______
 Gifts for holidays $______
 Medical/dental (uninsured) $______
 Other: ________________________ $______
D. INSURANCE
 Medical/dental $______
 Child(ren)'s medical/dental $______
 Life $______
 Other: ________________________ $______
E. OTHER EXPENSES NOT LISTED ABOVE
 Clothing $______
 Medical/Dental (uninsured) $______
 Grooming $______
 Entertainment $______
 Gifts $______
 Religious organizations $______
 Miscellaneous $______
 Other: ________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
F. PAYMENTS TO CREDITORS MONTHLY
 CREDITOR: PAYMENT
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
__________________________________ $______
28. TOTAL MONTHLY EXPENSES (add ALL monthly
 amounts in A through F above) 28. $______
SUMMARY
29. TOTAL PRESENT MONTHLY NET INCOME
 (from line 27 of SECTION I. INCOME) 29. $______
30. TOTAL MONTHLY EXPENSES (from line 28 above) 30. $______
31. SURPLUS (If line 29 is more than line 30, subtract line 30
 from line 29. This is the amount of your surplus. Enter that
 amount here.) 31. $______
32. (DEFICIT) (If line 30 is more than line 29, subtract line 29
 from line 30. This is the amount of your deficit. Enter that
 amount here.) 32. ($_____)
SECTION III: ASSETS AND LIABILITIES
*234
Use the nonmarital column only if this is a petition for dissolution of marriage
and you believe an item is "nonmarital," meaning it belongs to only one of you
and should not be divided. You should indicate to whom you believe the item(s) or
debt belongs. (Typically, you will only use this column if property/debt was
owned/owed by one spouse before the marriage. See the "general information for
pro se litigants" found at the beginning of these forms and section 61.075(1), Florida
Statutes, for definitions of "marital" and "nonmarital" assets and liabilities.)
A. ASSETS:
DESCRIPTION OF ITEM(S). List a description of
each separate item owned by you (and/or your spouse, Current Fair Nonmarital
if this is a petition for dissolution of marriage). Market Value (√correct column)
 ------------------
√the box next to any asset(s) that you are requesting
the judge award to you. husband wife
[] Cash (on hand) $
[] Cash (in banks or credit unions)
[] Stocks, Bonds, Notes
[] Real estate: (Home)
[] (Other)
[] Automobiles
[] Other personal property
[] Retirement plans (Profit Sharing, Pension, IRA,
 401(k)s, etc.)
[] Other
[]
[]
[]
[]
[]
[]
[] √ here if additional pages are attached.
Total Assets (add column B) $______
B. LIABILITIES:
DESCRIPTION OF ITEM(S). List a description of
each separate debt owed by you (and/or your spouse, Current Nonmarital
if this is a petition for dissolution of marriage). Amount Owed (√correct column)
√ the box next to any debt(s) for which you believe
you should be responsible. husband wife
[] Mortgages on real estate $
[] Auto loans
[]
[] Charge/credit card accounts
[]
[]
[]
[] Other
[]
[]
*235
[]
[]
[]
[]
[] √ here if additional pages are
 attached.
Total Debts (add column B) $______
C. CONTINGENT ASSETS AND LIABILITIES
INSTRUCTIONS: If you have any POSSIBLE assets (income potential, accrued
vacation or sick leave, bonus, inheritance, etc.) or POSSIBLE liabilities (possible
lawsuits, future unpaid taxes, contingent tax liabilities, debts assumed by
another), you must list them here.
 Possible Nonmarital
 Contingent Assets Value (√ correct column)
√ the box next to any contingent ------------------
asset(s) which you are requesting
the judge award to you. husband wife
[] $
[]
Total Contingent Assets $______
 Contingent Liabilities Possible Amount Nonmarital
 Owed (√ correct column)
 ------------------
√ the box next to any contingent
debt(s) for which you believe you
should be responsible. husband wife
[] $
[]
Total Contingent
Liabilities $______
SECTION IV: CHILD SUPPORT GUIDELINES WORKSHEET
( Florida Family Law Form 12.901(g), Child Support Guidelines Worksheet,
MUST be filed with the court at or prior to a hearing to establish or modify child
support. This requirement cannot be waived by the parties.)
[ one only]
 A Child Support Guidelines Worksheet IS or WILL BE filed in this case.
The case involves the establishment or modification of child support.
 A Child Support Guidelines Worksheet IS NOT being filed in this case.
The establishment or modification of child support is not an issue in this case.
I certify that a copy of this document was [√ one only] ( ) mailed ( ) faxed and
mailed ( ) hand delivered to the person(s) listed below on {date} ______
Other party or his/her attorney:
Name: __________________________________________________________________________
Address: ________________________________________________________________________
City, State, Zip: _______________________________________________________________
Fax Number: _____________________________________________________________________
*236
I understand that I am swearing or affirming under oath to the truthfulness
of the claims made in this affidavit and that the punishment for knowingly
making a false statement includes fines and/or imprisonment.
Dated: _______________________
 ___________________________________
 Signature of Party
 Printed Name: _____________________
 Address: __________________________
 City, State, Zip: _________________
 Telephone Number: _________________
 Fax Number: _______________________
STATE OF FLORIDA
COUNTY OF _________________
Sworn to or affirmed and signed before me on _________ by _______________
 ___________________________________
 NOTARY PUBLICSTATE OF
 FLORIDA
 ___________________________________
 [Print, type, or stamp commissioned
 name of notary.]
____ Personally known
____ Produced identification
 Type of identification produced ___________________
IF A NONLAWYER HELPED YOU FILL OUT THIS FORM, HE/SHE MUST
FILL IN THE BLANKS BELOW: [ fill in all blanks]
I, {full legal name and trade name of nonlawyer} ________________________,
a nonlawyer, located at {street} ______________, {city} _________________,
{state} _______, {phone} _________, helped {name} _______________________,
who is the [√ one only] ____ petitioner or ____ respondent, fill out this form.

INSTRUCTIONS FOR FLORIDA FAMILY LAW FORM 12.901(e),

FAMILY LAW FINANCIAL AFFIDAVIT

When should this form be used?
This form should be used when you are involved in a family law case that requires a financial affidavit and your individual gross income is $50,000 OR MORE per year.
This form should be typed or printed in black ink. After completing this form, you should sign the form before a notary public. You should then file the original with the clerk of the circuit court in the county where the petition was filed and keep a copy for your records.

What should I do next?
A copy of this form must be mailed or hand delivered to the other party in your case, if it is not served on him or her with your initial papers. This must be accomplished within 45 days of service of the petition.

Where can I look for more information?
Before proceeding, you should read "General Information for Pro Se Litigants" found at the beginning of these forms. The words that are in "bold underline" in these instructions are defined there. For further information, see rule 12.285, Florida Family Law Rules of Procedure.

Special notes ...
If this is a domestic violence case and you want to keep your address confidential for safety reasons, do not enter the address, telephone, and fax information at the bottom of this form. Instead, file Petitioner's Request *237 for Confidential Filing of Address, Florida Family Law Form 12.980(i).
The affidavit must be completed using monthly income and expense amounts. If you are paid or your bills are due on a schedule that is not monthly, you must convert those amounts. Hints are provided below for making these conversions.
Hourly  If you are paid by the hour, you may convert your income to monthly as follows:
 Hourly amount × Hours worked per week = Weekly amount
 Weekly amount × 52 Weeks per year = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Daily  If you are paid by the day, you may convert your income to monthly as follows:
 Daily amount × Days worked per week = Weekly amount
 Weekly amount × 52 Weeks per year = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Weekly  If you are paid by the week, you may convert your income to monthly as follows:
 Weekly amount × 52 Weeks per year = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Bi-weekly  If you are paid every two weeks, you may convert your income to monthly as
 follows:
 Bi-weekly amount × 26 = Yearly amount
 Yearly amount ÷ 12 Months per year = Monthly Amount
Bi-monthly  If you are paid wice per month, you may convert your income to monthly as
 follows:
 Bi-monthly amount × 2 = Monthly Amount
Expenses may be converted in the same manner.
Remember, a person who is NOT an attorney is called a nonlawyer. If a nonlawyer helps you fill out these forms, that person must give you a copy of a Disclosure from Nonlawyer, Florida Family Law Form 12.900, before he or she helps you. A nonlawyer helping you fill out these forms also must put his or her name, address, and telephone number on the bottom of the last page of every form he or she helps you complete.
 FORM 12.901(e). FAMILY LAW FINANCIAL AFFIDAVIT
 IN THE CIRCUIT COURT OF THE ______ JUDICIAL CIRCUIT
 IN AND FOR ______ COUNTY, FLORIDA
 Case No.: ___________________
 Division: ___________________
____________________________,
 Petitioner,
 and
____________________________,
 Respondent.
 FAMILY LAW FINANCIAL AFFIDAVIT
 ($50,000 or more individual Gross Annual Income)
I, {full legal name} _______________________________________, being sworn,
certify that the following information is true:
SECTION I. INCOME
1. Date of Birth: _________
2. Social Security Number: ____________
3. My occupation is: ______________________________________________________
4. I am currently
[√ all that apply]
*238
____ a. Unemployed
 Describe your efforts to find employment, how soon you expect to be employed,
 and the pay you expect to receive: __________________________________________
 _____________________________________________________________________________
____ b. Employed by: _____________________________________________________________
 Address: ___________________________________________________________________
 City, State, Zip code: ______________________________________________________
 Telephone Number: ____________________________________________________________
 Pay rate: $____________ every week ( ) every other week ( ) twice a
 month ( ) monthly ( ) other: _________________________________________________
 If you are expecting to become unemployed or change jobs soon, describe the
 change you expect and why and how it will affect your income: _________________
 _______________________________________________________________________________
 [] Check here if you currently have more than one job. List the information
 above for the second job(s) on a separate sheet and attach it to this affidavit.
____ c. Retired. Date of retirement: _______________
 Employer from whom retired: ____________________________________________________
 Address: _______________________________________________________________________
 City, State, Zip code: ____________________ Telephone Number: ___________________
LAST YEAR'S GROSS INCOME: Your Income Other Party's Income (if known)
 YEAR ______ $ __________ $ ____________
PRESENT MONTHLY GROSS INCOME:
All amounts must be MONTHLY. See the instructions with this form to figure
out money amounts for anything that is NOT paid monthly. Attach more paper, if
needed. Items included under "other" should be listed separately with separate
dollar amounts.
 1. Monthly gross salary or wages 1. $______
 2. Monthly bonuses, commissions, allowances, overtime, tips, and
 similar payments 2. _______
 3. Monthly business income from sources such as self-employment,
 partnerships, close corporations, and/or independent
 contracts (Gross receipts minus ordinary and necessary expenses
 required to produce income.) ( [] Attach sheet itemizing
 such income and expenses.) 3. _______
 4. Monthly disability benefits/SSI 4. _______
 5. Monthly Workers' Compensation 5. _______
 6. Monthly Unemployment Compensation 6. _______
 7. Monthly pension, retirement, or annuity payments 7. _______
 8. Monthly Social Security benefits 8. _______
 9. Monthly alimony actually received
 9a. From this case: $______
 9b. From other cases(s): _______ Add 9a and 9b 9. _______
10. Monthly interest and dividends 10. _______
11. Monthly rental income (gross receipts minus ordinary and
 necessary expenses required to produce income) ([] Attach
 sheet itemizing such income and expense items.) 11. _______
12. Monthly income from royalties, trusts, or estates 12. _______
13. Monthly reimbursed expenses and in-kind payments to the
 extent that they reduce personal living expenses ([] Attach
 sheet itemizing each item and amount.) 13. _______
14. Monthly gains derived from dealing in property (not including
 nonrecurring gains) 14. _______
 Any other income of a recurring nature (identify source)
15. ____________________________________________________________ 15. _______
16. ____________________________________________________________ 16. _______
*239
17. TOTAL PRESENT MONTHLY GROSS
 INCOME (Add lines 1-16) 17. $______
PRESENT MONTHLY DEDUCTIONS:
All amounts must be MONTHLY. See the instructions with this form to figure
out money amounts for anything that is NOT paid monthly.
18. Monthly federal, state, and local income tax (corrected for
 filing status and allowable dependents and income tax liabilities)
 a. Filing Status ______
 b. Number of dependents claimed ______ 18. $______
19. Monthly FICA or self-employment taxes 19. _______
20. Monthly Medicare payments 20. _______
21. Monthly mandatory union dues 21. _______
22. Monthly mandatory retirement payments 22. _______
23. Monthly health insurance payments (including dental insurance),
 excluding portion paid for any minor children of this
 relationship 23. _______
24. Monthly court-ordered child support actually paid for children
 from another relationship 24. _______
25. Monthly court-ordered alimony actually paid
 25a. from this case: $______
 25b. from other case(s): ______ Add 25a and 25b 25. _______
26. TOTAL DEDUCTIONS ALLOWABLE
 UNDER SECTION 61.30, FLORIDA
 STATUTES (Add lines 18 through 25) TOTAL: 26. $______
27. PRESENT NET MONTHLY INCOME (Subtract line
 26 from line 17) 27. $______
 ______
SECTION II. AVERAGE MONTHLY EXPENSES
Proposed/Estimated Expenses. If this is a dissolution of marriage case and your
expenses as listed below do not reflect what you actually pay currently, you should
write "estimate" next to each amount that is estimated.
HOUSEHOLD:
 1. Monthly mortgage or rent payments 1. $______
 2. Monthly property taxes (if not included in mortgage) 2. _______
 3. Monthly insurance on residence (if not included in mortgage) 3. _______
 4. Monthly condominium maintenance fees and homeowner's
 association fees 4. _______
 5. Monthly electricity 5. _______
 6. Monthly water, garbage, and sewer 6. _______
 7. Monthly telephone 7. _______
 8. Monthly fuel oil or natural gas 8. _______
 9. Monthly repairs and maintenance 9. _______
 10. Monthly lawn care 10. _______
 11. Monthly pool maintenance 11. _______
 12. Monthly pest control 12. _______
 13. Monthly misc. household 13. _______
 14. Monthly food and home supplies 14. _______
 15. Monthly meals outside home 15. _______
 16. Monthly cable t.v. 16. _______
 17. Monthly alarm service contract 17. _______
 18. Monthly service contracts on appliances 18. _______
 19. Monthly maid service 19. _______
 Other:
 20. ______________________________________________________________ 20. _______
*240
 21. ______________________________________________________________ 21. _______
 22. ______________________________________________________________ 22. _______
 23. ______________________________________________________________ 23. _______
 24. ______________________________________________________________ 24. _______
 25. SUBTOTAL (add lines 1 through 24) 25. $______
 AUTOMOBILE:
 26. Monthly gasoline and oil 26. $______
 27. Monthly repairs 27. _______
 28. Monthly auto tags and emission testing 28. _______
 29. Monthly insurance 29. _______
 30. Monthly payments (lease or financing) 30. _______
 31. Monthly rental/replacements 31. _______
 32. Monthly alternative transportation (bus, rail, car pool, etc.) 32. _______
 33. Monthly tolls and parking 33. _______
 34. Other: _______________________________________________________ 34. _______
35. SUBTOTAL (add lines 26 through 34) 35. $______
 MONTHLY EXPENSES FOR CHILDREN COMMON TO BOTH PARTIES
 36. Monthly nursery, babysitting, or day care 36. $______
 37. Monthly school tuition 37. _______
 38. Monthly school supplies, books, and fees 38. _______
 39. Monthly after school activities 39. _______
 40. Monthly lunch money 40. _______
 41. Monthly private lessons or tutoring 41. _______
 42. Monthly allowances 42. _______
 43. Monthly clothing and uniforms 43. _______
 44. Monthly entertainment (movies, parties, etc.) 44. _______
 45. Monthly health insurance 45. _______
 46. Monthly medical, dental, prescriptions (nonreimbursed only) 46. _______
 47. Monthly psychiatric/psychological/counselor 47. _______
 48. Monthly orthodontic 48. _______
 49. Monthly vitamins 49. _______
 50. Monthly beauty parlor/barber shop 50. _______
 51. Monthly nonprescription medication 51. _______
 52. Monthly cosmetics, toiletries, and sundries 52. _______
 53. Monthly gifts from child(ren) to others (other children, relatives,
 teachers, etc.) 53. _______
 54. Monthly camp or summer activities 54. _______
 55. Monthly clubs (Boy/Girl Scouts, etc.) 55. _______
 56. Monthly access expenses (for nonresidential parent) 56. _______
 57. Monthly miscellaneous 57. _______
 58. SUBTOTAL (add lines 36 through 57) 58. _______
 MONTHLY EXPENSES FOR CHILD(REN) FROM ANOTHER
 RELATIONSHIP (other than court-ordered child support)
 59. _____________________________________________________________ 59. $______
 60. _____________________________________________________________ 60. _______
 61. _____________________________________________________________ 61. _______
 62. _____________________________________________________________ 62. _______
 63. SUBTOTAL (add lines 59 through 62) 63. $______
 MONTHLY INSURANCE
 64. Health insurance, excluding portion paid for any minor
 child(ren) of this relationship 64. $ ______
 65. Life insurance 65. _______
 66. Dental insurance 66. _______
*241
 Other:
 67. _____________________________________________________________ 67. _______
 68. _____________________________________________________________ 68. _______
 69. SUBTOTAL (add lines 64 through 68) 69. $______
 OTHER MONTHLY EXPENSES NOT LISTED ABOVE:
 70. Monthly dry cleaning and laundry 70. $______
 71. Monthly clothing 71. _______
 72. Monthly medical, dental, and prescription (unreimbursed only) 72. _______
 73. Monthly psychiatric, psychological, or counselor (unreimbursed
 only) 73. _______
 74. Monthly non-prescription medications, cosmetics, toiletries,
 and sundries 74. _______
 75. Monthly grooming 75. _______
 76. Monthly gifts 76. _______
 77. Monthly pet expenses 77. _______
 78. Monthly club dues and membership 78. _______
 79. Monthly sports and hobbies 79. _______
 80. Monthly entertainment 80. _______
 81. Monthly periodicals/books/tapes/CD's 81. _______
 82. Monthly vacations 82. _______
 83. Monthly religious organizations 83. _______
 84. Monthly bank charges/credit card fees 84. _______
 85. Monthly education expenses 85. _______
 Other: (include any usual and customary expenses not otherwise mentioned in the
 items listed above)
 86. _____________________________________________________________ 86. _______
 87. _____________________________________________________________ 87. _______
 88. _____________________________________________________________ 88. _______
 89. _____________________________________________________________ 89. _______
 90. SUBTOTAL (add lines 70 through 89) 90. $______
 MONTHLY PAYMENTS TO CREDITORS: (only when payments are currently
 made by you on outstanding balances)
 NAME OF CREDITOR(s):
 91. _____________________________________________________________ 91. $______
 92. _____________________________________________________________ 92. _______
 93. _____________________________________________________________ 93. _______
 94. _____________________________________________________________ 94. _______
 95. _____________________________________________________________ 95. _______
 96. _____________________________________________________________ 96. _______
 97. _____________________________________________________________ 97. _______
 98. _____________________________________________________________ 98. _______
 99. _____________________________________________________________ 99. _______
100. _____________________________________________________________ 100. _______
101. _____________________________________________________________ 101. _______
102. _____________________________________________________________ 102. _______
103. _____________________________________________________________ 103. _______
104. SUBTOTAL (add lines 91 through 103) 104. $_____
105. TOTAL MONTHLY EXPENSES:
 (add lines 25, 35, 58, 63, 69, 90 and 104 of Section II, Expenses) 105. $_____
 _______
SUMMARY
106. TOTAL PRESENT MONTHLY NET INCOME
 (from line 27 of SECTION I. INCOME) 106. $_____
*242
107. TOTAL MONTHLY EXPENSES (from line 82 above) 107. $_____
108. SURPLUS (If line 83 is more than line 84, subtract line 84
 from line 83. This is the amount of your surplus. Enter that
 amount here.) 108. $_____
109. (DEFICIT) (If line 84 is more than line 83, subtract 83 from
 line 84. This is the amount of your deficit. Enter that
 amount here.) 109. ($____)
SECTION III: ASSETS AND LIABILITIES
A. ASSETS (This is where you list what you OWN.)
INSTRUCTIONS:
STEP 1: In column A, list a description of each separate item owned by you
(and/or your spouse, if this is a petition for dissolution of marriage). Blank spaces
are provided if you need to list more than one of an item.
STEP 2: If this is a petition for dissolution of marriage, check the box in Column A
next to any item that you are requesting the judge award to you.
STEP 3: In column B, write what you believe to be the current fair market value of
all items listed.
STEP 4: Use column C only if this is a petition for dissolution of marriage and
you believe an item is "nonmarital," meaning it belongs to only one of you and
should not be divided. You should indicate to whom you believe the item belongs.
(Typically, you will only use Column C if property was owned by one spouse before
the marriage. See the "general information for pro se litigants" found at the
beginning of these forms and section 61.075(1), Florida Statutes, for definitions of
"marital" and "nonmarital" assets and liabilities.)
 A B C
 Current Fair Nonmarital
 ASSETS: DESCRIPTION OF ITEM(S) Market Value (√ correct column)
√ the box next to any asset(s) that you are requesting
 the judge award to you. husband wife
[] Cash (on hand) $
[] Cash (in banks or credit unions)
[]
[] Stocks/Bonds
[]
[]
[] Notes (money owed to you in writing)
[]
[]
[] Money owed to you (not evidenced by a note)
[]
[]
[] Real estate: (Home)
[] (Other)
[]
*243
[]
[]
[]
[]
[] Business interests
[]
[]
[]
[]
[] Automobiles
[]
[]
[]
[] Boats
[]
[]
[] Other vehicles
[]
[]
[] Retirement plans (Profit Sharing, Pension, IRA,
 401(k)'s, etc.)
[]
[]
[]
[] Furniture & furnishings in home
[]
[] Furniture & furnishings elsewhere
[]
[] Collectibles
[]
[] Jewelry
[]
[] Life insurance (cash surrender value)
[]
[]
[] Sporting and entertainment (T.V., stereo, etc.) equipment
[]
[]
[]
[]
[] Other assets
[]
[]
*244
[]
[]
[]
[]
[]
Total Assets (add column B) $______
B. LIABILITIES/DEBTS (This is where you list what you OWE.)
INSTRUCTIONS:
STEP 1: In column A, list a description of each separate debt owed by you (and/or
your spouse, if this is a petition for dissolution of marriage). Blank spaces are
provided if you need to list more than one of an item.
STEP 2: If this is a petition for dissolution of marriage, check the box in Column A
next to any debt(s) for which you believe you should be responsible.
STEP 3: In column B, write what you believe to be the current amount owed for
all items listed.
STEP 4: Use column C only if this is a petition for dissolution of marriage and
you believe an item is "nonmarital," meaning the debt belongs to only one of
you and should not be divided. You should indicate to whom you believe the debt
belongs. (Typically, you will only use Column C if the debt was owed by one spouse
before the marriage. See the "general information for pro se litigants" found at the
beginning of these forms and section 61.075(1), Florida Statutes, for definitions of
"marital" and "nonmarital" assets and liabilities.)
 A B C
 Current
 Amount Owed Nonmarital
 LIABILITIES: DESCRIPTION OF ITEM(S) (√ correct column)
 ------------------
√ the box next to any debt(s) for which you believe
you should be responsible. husband wife
[] Mortgages on real estate: (Home) $
[] (Other)
[]
[]
[] Charge/credit card accounts
[]
[]
[]
[]
[]
*245
[] Auto loan
[] Auto loan
[] Bank/Credit Union loans
[]
[]
[]
[] Money you owe (not evidenced by a note)
[]
[] Judgments
[]
[] Other
[]
[]
[]
[]
[]
[]
Total Debts (add column B) $______
C. NET WORTH (excluding contingent assets and liabilities)
Total Assets (enter total of Column B in Asset Table;
Section A) $______
Total Liabilities (enter total of Column B in Liabilities Table;
Section B) $______
TOTAL NET WORTH (Total Assets minus Total
Liabilities)
(excluding contingent assets and liabilities) $______
 ------
D. CONTINGENT ASSETS AND LIABILITIES
INSTRUCTIONS: If you have any POSSIBLE assets (income potential, accrued
vacation or sick leave, bonus, inheritance, etc.) or POSSIBLE liabilities (possible
lawsuits, future unpaid taxes, contingent tax liabilities, debts assumed by another),
you must list them here.
*246
 A B C
 Nonmarital
 Contingent Assets Possible Value (√ Correct Column)
√ the box next to any contingent asset(s) ------------------
that you are requesting the judge award to you. husband wife
[] $
[]
[]
[]
[]
Total Contingent Assets $____
 A B C
 Contingent Liabilities Possible Amount Nonmarital
 Owed (√ correct column)
 ------------------
√ the box next to any contingent debt(s)
for which you believe you should be responsible. husband wife
[] $
[]
[]
[]
[]
Total Contingent
Liabilities $______
E. Has there been any agreement between you and the other party that one of you
will take responsibility for a debt and will hold the other party harmless from that
debt? ( ) yes ( ) no If yes, explain: ____________________________________________________
__________________________________________________________________________________________
__________________________________________________________________________________________
__________________________________________________________________________________________
F. CHILD SUPPORT GUIDELINES WORKSHEET. Florida Family Law
Form 12.901(g), Child Support Guidelines Worksheet, MUST be filed with the court
at or prior to a hearing to establish or modify child support. This requirement
cannot be waived by the parties.
[√ one only]
 A Child Support Guidelines Worksheet IS or WILL BE filed in this case.
This case involves the establishment or modification of child support child
support.
 A Child Support Guidelines Worksheet IS NOT being filed in this case.
The establishment or modification of child support is not an issue in this case.
I certify that a copy of this financial affidavit was: ( ) mailed, ( ) faxed and
mailed, or ( ) hand delivered to the person(s) listed below on {date} ____.
Other party or his/her attorney:
Name: ______________________________________________________________________________
Address: ___________________________________________________________________________
City, State, Zip: __________________________________________________________________
Fax Number: ________________________________________________________________________
I understand that I am swearing or affirming under oath to the truthfulness
of the claims made in this affidavit and that the punishment for knowingly
making a false statement includes fines and/or imprisonment.
*247
Dated: ________________________ ________________________________
 Signature of Party
 Printed Name: _________________
 Address: ______________________
 City, State, Zip: _____________
 Telephone Number: _____________
 Fax Number: ___________________
STATE OF FLORIDA
COUNTY OF ________________
Sworn to or affirmed and signed before me on ______ by ________.
 _______________________________
 NOTARY PUBLIC-STATE OF
 FLORIDA
 _______________________________
 [Print, type, or stamp commissioned
 name of notary.]
____ Personally known
____ Produced identification
 Type of identification produced ______________
IF A NONLAWYER HELPED YOU FILL OUT THIS FORM, HE/SHE MUST
FILL IN THE BLANKS BELOW: [ fill in all blanks]
I, {full legal name and trade name of nonlawyer} _________________________,
a nonlawyer, located at {street} ____________, {city} ___________,
{state} _________, {phone} _______, helped {name} _____________,
who is the [√ one only] ___ petitioner or ___ respondent, fill out this form.

INSTRUCTIONS FOR FLORIDA FAMILY LAW FORM 12.903(c),

SUPPLEMENTAL PETITION FOR MODIFICATION OF ALIMONY

When should this form be used?
This form should be used when you are asking the court to change a current court-ordered alimony obligation. The court can change an alimony order if the judge finds that there has been a substantial change in the circumstances of the parties.
This form should be typed or printed in black ink. After completing this form, you should sign the form before a notary public. You should file this form in the county where the original order was entered. If the order was entered in another state, or if the respondent lives in another state, you should speak with an attorney about where to file this form. You should file the original with the clerk of the circuit court and keep a copy for your records.

What should I do next?
For your case to proceed, you must properly notify the other party in your case of the supplemental petition. If you know where he or she lives, you should use personal service. If you absolutely do not know where he or she lives, you may use constructive service. You may also be able to use constructive service if the other party resides in another state or country. However, if constructive service is used, other than granting a divorce, the court may only grant limited relief. For more information on constructive service, see Notice of Action for Dissolution of Marriage, Florida Family Law Form 12.913(a), and Affidavit of Diligent Search and Inquiry, Florida Family Law Form 12.913(b). If the other party is in the military service of the United States, additional steps for service may be required. See, for example, Memorandum for Certificate of Military Service, *248 Florida Family Law Form 12.912(a). In sum, the law regarding constructive service and service on an individual in the military service is very complex and you may wish to consult an attorney regarding these issues.
If personal service is used, the other party has 20 days to answer after being served with your supplemental petition. Your case will then generally proceed in one of the following three ways:
DEFAULT ... If after 20 days, no answer has been filed, you may file a Motion for Default, Florida Family Law Form 12.922(a), with the clerk of court. Then, if you have filed all of the required papers, you may call the clerk, family law intake staff, or judicial assistant to set a final hearing. You must notify the other party of the hearing by using a Notice of Hearing (General), Florida Family Law Form 12.923, or other appropriate notice of hearing form.
UNCONTESTED ... If the respondent files an answer that agrees with everything in your supplemental petition or an answer and waiver, and you have complied with mandatory disclosure and filed all of the required papers, you may call the clerk, family law intake staff, or judicial assistant to set a final hearing. You must notify the other party of the hearing by using a Notice of Hearing (General), Florida Family Law Form 12.923, or other appropriate notice of hearing form.
CONTESTED ... If the respondent files an answer or an answer and counterpetition, which disagrees with or denies anything in your supplemental petition, and you are unable to settle the disputed issues, you should file a Notice for Trial, Florida Family Law Form 12.924, after you have complied with mandatory disclosure and filed all of the required papers. Some circuits may require the completion of mediation before a final hearing may be set. Then you should contact the clerk, family law intake staff, or judicial assistant for instructions on how to set your case for trial (final hearing). If the respondent files an answer and counterpetition, you should answer the counterpetition within 20 days using an Answer to Counterpetition, Florida Family Law Form 12.902(d).

Where can I look for more information?
Before proceeding, you should read "General Information for Pro Se Litigants" found at the beginning of these forms. The words that are in "bold underline" in these instructions are defined there. For further information, see chapter 61, Florida Statutes.

Special notes...
With this form you must also file the following and serve a copy on the other party:
 Affidavit of Indigency, Florida Family Law Form 12.901(c), if you are requesting that filing fees be waived.
 Settlement Agreement, if you have reached an agreement on any or all of the issues. Although there is no form for this in these Florida Family Law Forms, you may construct a settlement agreement using the pertinent sections contained in Marital Settlement Agreement for Dissolution of Marriage with Dependent or Minor Child(ren), Florida Family Law Form 12.901(h)(1), or Marital Settlement Agreement for Dissolution of Marriage with No Dependent or Minor Child(ren), Florida Family Law Form 12.901(h)(2).
 Financial Affidavit, Florida Family Law Form 12.901(d) or (e). (This must be filed within 45 days of service of the supplemental petition on the other party, if not filed at the time of the supplemental petition.)
 Certificate of Compliance with Mandatory Disclosure, Florida Family Law Form 12.932. (This must be filed within 45 days of service of the supplemental petition on the other party, if not filed at the time of the supplemental petition, unless you and the other party have agreed not to exchange these documents.)
Alimony ... In order to modify an order for alimony, a judge must find that there has been a substantial change in circumstances.
Temporary Relief ... If you need temporary relief regarding modification of alimony, *249 you may file a Motion for Temporary Support with Dependent or Minor Child(ren), Florida Family Law Form 12.947(a), or Motion for Temporary Support with No Dependent or Minor Child(ren), Florida Family Law Form 12.948(b), whichever is appropriate. For more information, see the instructions for those forms.
Settlement Agreement ... If you and the respondent are able to reach an agreement on any or all of the issues, you should file a Settlement Agreement. Although there is no form for this in these Florida Family Law Forms, you may construct a settlement agreement using the pertinent sections contained in Marital Settlement Agreement for Dissolution of Marriage with Dependent or Minor Child(ren), Florida Family Law Form 12.901(h)(1), or Marital Settlement Agreement for Dissolution of Marriage with No Dependent or Minor Child(ren), Florida Family Law Form 12.901(h)(2). Both parties must sign this agreement before a notary public. Any issues on which you are unable to agree will be considered contested and settled by the judge at the final hearing.
Final Judgment Form ... These family law forms contain a Supplemental Final Judgment Modifying Alimony, Florida Family Law Form 12.993(c), which the judge may use. You should check with the clerk, family law intake staff, or judicial assistant to see if you need to bring it with you to the hearing. If so, you should type or print the heading, including the circuit, county, case number, division, and the parties' names, and leave the rest blank for the judge to complete at your hearing or trial.
Nonlawyer ... Remember, a person who is NOT an attorney is called a nonlawyer. If a nonlawyer helps you fill out these forms, that person must give you a copy of a Disclosure from Nonlawyer, Florida Family Law Form 12.900, before he or she helps you. A nonlawyer helping you fill out these forms also must put his or her name, address, and telephone number on the bottom of the last page of every form he or she helps you complete.
 FORM 12.903(c). SUPPLEMENTAL PETITION FOR MODIFICATION OF ALIMONY
 IN THE CIRCUIT COURT OF THE __________ JUDICIAL CIRCUIT,
 IN AND FOR _________ COUNTY, FLORIDA
 Case No.: ______________________
 Division: ______________________
____________________________,
 Petitioner,
 and
____________________________,
 Respondent.
 SUPPLEMENTAL PETITION FOR MODIFICATION OF ALIMONY
 I, {full legal name} ________________________, being sworn,
certify that the following information is true:
1. The parties to this action were granted a final judgment ( ) of dissolution of
 marriage ( ) for support unconnected with a dissolution of marriage on
 {date} ___________. A copy of the final judgment any modification(s) is
 attached.
2. Paragraph(s) _____________ of the ( ) final judgment or ( ) most recent
 modification thereof establishes the present alimony at $__________ every
 ( ) week ( ) other week ( ) month, beginning on {date} _________
*250
3. Since the final judgment or most recent modification thereof, there has been a
 substantial change in circumstances, requiring a modification in alimony. This
 change in circumstance is as follows: {explain} _____________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
4. I ask the Court to modify alimony as follows: {explain} _____________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
5. A completed Financial Affidavit, Florida Family Law Form 12.901(d) or
 (e), is, or will be, filed.
6. Other: _______________________________________________________________________
 ______________________________________________________________________________
 ______________________________________________________________________________
I understand that I am swearing or affirming under oath to the truthfulness
of the claims made in this petition and that the punishment for knowingly
making a false statement includes fines and/or imprisonment.
Dated: ______________________ ____________________________________________
 Signature of Party
 Printed Name: ______________________________
 Address: ___________________________________
 City, State, Zip: __________________________
 Telephone Number: __________________________
 Fax Number: ________________________________
*251
STATE OF FLORIDA
COUNTY OF _______________
Sworn to or affirmed and signed before me on ____________ by ___________.
 ______________________________
 NOTARY PUBLIC-STATE OF
 FLORIDA
 ______________________________
 [Print, type, or stamp commissioned
 name of notary.]
___ Personally known
___ Produced identification
 Type of identification produced ___________
IF A NONLAWYER HELPED YOU FILL OUT THIS FORM, HE/SHE MUST
FILL IN THE BLANKS BELOW: [ fill in all blanks]
I, {full legal name and trade name of nonlawyer} _____________________________,
a nonlawyer, located at {street} _____________________________________________,
{city} _______________, {state} __________, {phone} ________,
helped {name} ___________________, who is the [√ one only]
___ petitioner or ___ respondent, fill out this form.

INSTRUCTIONS FOR FLORIDA FAMILY LAW FORM 12.932,

CERTIFICATE OF COMPLIANCE WITH MANDATORY DISCLOSURE

When should this form be used?
Mandatory disclosure requires each party in a dissolution of marriage case to provide the other party with certain financial information and documents. These documents must be provided by mail or hand delivery to the other party within 45 days of service of the petition for dissolution of marriage or supplemental petition for modification on the respondent. The mandatory disclosure rule applies to all original and supplemental dissolution of marriage cases, except simplified dissolution of marriage cases and cases where the respondent is served by constructive service and does not answer. You should use this form to notify the court and the other party that you have complied with the mandatory disclosure rule.
Each party must provide the other party with the documents listed in section 2 of this form if the relief being sought is permanent regardless of whether it is an initial or supplemental proceeding. Of the documents listed on this form, the financial affidavit is the only document that must be filed with the court and sent to the other party; all other documents should be sent to the other party but not filed with the court. If your individual gross annual income is under $50,000, you should complete the Family Law Financial Affidavit (Short Form), Florida Family Law Form 12.901(d). If your individual gross annual income is $50,000 or more, you should complete the Family Law Financial Affidavit, Florida Family Law Form 12.901(e).
In addition, there are separate mandatory disclosure requirements that apply to temporary financial hearings, which are listed in section 1 of this form. The party seeking temporary financial relief must serve these *252 documents on the other party with the notice of temporary financial hearing. The responding party must either deliver the required documents to the party seeking temporary financial relief on or before 5:00 p.m., 2 business days before the hearing on temporary financial relief, or mail (postmark) them to the party seeking temporary financial relief 7 days before the hearing on temporary financial relief. Any documents that have already been served under the requirements for temporary or initial proceedings, do not need to be re-served again in the same proceeding. If a supplemental petition is filed, seeking modification, then the mandatory disclosure requirements begin again.
This form should be typed or printed in black ink. After completing this form, you should file the original with the clerk of the circuit court in the county where your case is filed and keep a copy for your records. A copy of this form must be mailed or hand delivered to any other party in your case.

What should I do next?
After you have provided the other party all of the financial information and documents and have filed this form certifying that you have complied with this rule, you are under a continuing duty to promptly give the other party any information or documents that change your financial status or that make the information already provided inaccurate. Refer to the instructions regarding the petition in your case to determine how you should proceed after filing this form.

Where can I look for more information?
Before proceeding, you should read "General Information for Pro Se Litigants" found at the beginning of these forms. For further information, see rule 12.285, Florida Family Law Rules of Procedure.

Special notes ...
You may provide copies of required documents; however, the originals must be produced for inspection if the other party requests to see them.
Although the financial affidavits are based on individual gross income, either party may ask the other party to complete the Family Law Financial Affidavit, Florida Family Law Form 12.901(e), by serving the appropriate interrogatory form (see Standard Family Law Interrogatories, Florida Family Law Forms 12.930(b)(original proceedings) or (c) (modification proceedings).) Any portion of the mandatory disclosure rule may be modified by order of the judge or agreement of the parties. Therefore, you and your spouse may agree that you will not require each other to produce the documents required under the mandatory disclosure rule. This exception does not apply to the Financial Affidavit, Florida Family Law Form 12.901(d) or (e), which is required in all cases and cannot be waived.
Remember, a person who is NOT an attorney is called a nonlawyer. If a nonlawyer helps you fill out these forms, that person must give you a copy of Disclosure from Nonlawyer, Florida Family Law Form 12.900, before he or she helps you. A nonlawyer helping you fill out these forms also must put his or her name, address, and telephone number on the bottom of the last page of every form he or she helps you complete.
 FORM 12.932. CERTIFICATE OF COMPLIANCE
 WITH MANDATORY DISCLOSURE
 IN THE CIRCUIT COURT OF THE __________ JUDICIAL CIRCUIT,
 IN AND FOR ___________ COUNTY, FLORIDA
 Case No.: _______________________
 Division: _______________________
____________________________,
 Petitioner,
 and
____________________________,
 Respondent
*253
 CERTIFICATE OF COMPLIANCE WITH MANDATORY DISCLOSURE
I, {full legal name} ______________________________, certify that I
have complied with the mandatory disclosure required by Florida Family Law Rule
12.285 as follows:
1. FOR TEMPORARY FINANCIAL RELIEF, ONLY:
The date the following documents were served: _______________________________.
[√ all that apply]
___ a. Financial Affidavit (Filing of a Financial Affidavit cannot be waived.)
 ( ) Florida Family Law Form 12.901(d) (short form)
 ( ) Florida Family Law Form 12.901(e) (long form)
___ b. ( ) All personal (1040) federal tax, gift tax, and intangible personal
 property tax returns for the preceding year; or
 ( ) Transcript of tax returns as provided by IRS form 4506; or
 ( ) IRS forms W-2, 1099, and K-1 for the past year because the income
 tax return for the past year has not been prepared.
___ c. Pay stubs or other evidence of earned income for the 3 months before the
 service of the financial affidavit.
2. FOR INITIAL, SUPPLEMENTAL, AND PERMANENT FINANCIAL
RELIEF:
The date the following documents were served: _______________________________.
 [√ all that apply]
___ a. Financial Affidavit (Filing of a Financial Affidavit cannot be waived.)
 ( ) Florida Family Law Form 12.901(d) (short form)
 ( ) Florida Family Law Form 12.901(e) (long form)
___ b. ( ) All personal (1040) federal and state income returns, gift tax returns,
 and intangible personal property tax returns for the preceding 3
 years;
 ( ) IRS forms W-2, 1099, and K-1 for the past year because the income
 tax return for the past year has not been prepared.
___ c. Pay stubs or other evidence of earned income for the 3 months before the
 service of the financial affidavit.
___ d. A statement identifying the source and amount of all income for the 3
 months before the service of the financial affidavit, if not reflected on the
 pay stubs produced.
___ e. All loan applications and financial statements prepared for any purpose or
 used for any purpose within the 12 months preceding the service of the
 financial affidavit.
___ f. All deeds to real estate in which I presently own or owned an interest
 within the past 3 years. All promissory notes in which I presently own or
 owned an interest within the last 12 months. All present leases in which I
 own an interest.
___ g. All periodic statements for the last 3 months for all checking accounts and
 for the last year for all savings accounts, money market funds, certificates
 of deposit, etc.
___ h. All brokerage account statements for the last 12 months.
___ i. Most recent statement for any pension, profit sharing, deferred compensation,
 or retirement plan (for example, IRA, 401(k), 403(b), SEP, KEOGH,
 etc.) and summary plan description for any such plan in which I am
 participant or alternate payee.
___ j. The declarations page, the last periodic statement, and the certificate for
 any group insurance for all life insurance policies insuring my life or the
 life of my spouse.
*254
___ k. All health and dental insurance cards covering either of me or my spouse
 and/or our dependent child(ren).
___ l. Corporate, partnership, and trust tax returns for the last 3 tax years, in
 which I have an ownership or interest greater than or equal to 30%.
___ m. All credit cards and charge account statements and other records showing
 my (our) indebtedness as of the date of the filing of this action and for the
 prior 3 months. All promissory notes on which I presently owe or owed
 within the past year. All lease agreements I presently owe.
___ n. All premarital and marital agreements between the parties to this case.
___ o. If a modification proceeding, all written agreements entered into between
 the parties at any time since the order to be modified was entered.
___ p. All documents and tangible evidence relating to claims for special equity
 or nonmarital status of an asset or debt.
___ q. Any court order directing that I pay or receive spousal support (alimony)
 or child support.
I certify that a copy of this document was [√ one only] ( ) mailed ( ) faxed and
mailed ( ) hand delivered to the person(s) listed below on {date} ________________
Other party or his/her attorney:
Name: ________________________
Address: _____________________
City, State, Zip: ____________
Fax number: __________________
Dated: _______________________
 __________________________________
 Signature of Party
 Printed Name: ____________________
 Address: _________________________
 City, State, Zip: ________________
 Telephone Number: ________________
 Fax Number: ______________________
IF A NONLAWYER HELPED YOU FILL OUT THIS FORM, HE/SHE MUST
FILL IN THE BLANKS BELOW: [ fill in all blanks]
I, {full legal name and trade name of nonlawyer} _______________________________,
a nonlawyer, located at {street} ___________, {city} ____________________,
{state} ________, {phone} ___________, helped {name} _____________,
who is the [√ one only] ___ petitioner or ___ respondent, fill out this form.

INSTRUCTIONS FOR FLORIDA FAMILY LAW FORM 12.941(d),

MOTION TO MODIFY OR DISSOLVE TEMPORARY INJUNCTION

When should this form be used?
If a temporary injunction, either ex parte or after a hearing, has been entered against you, you may use this form to ask the court to modify or dissolve that injunction.
This form should be typed or printed in black ink. After completing this form, you should file the original with the clerk of the circuit court in the county where the injunction was entered and keep a copy for your records. You should ask the clerk to process your motion through their emergency procedures. A hearing will be held within 5 working days. You should ask for the date and time of your hearing and should file Notice of Hearing (General), Florida Family Law Form 12.923 or other appropriate notice of hearing form, and send a copy to the other party.

What should I do next?
A copy of this form must be mailed or hand delivered to the other party, along with a notice of hearing.

*255 Where can I look for more information?
Before proceeding, you should read "General Information for Pro Se Litigants" found at the beginning of these forms. For further information, see chapter 61, Florida Statutes, and rule 1.610, Florida Rules of Civil Procedure.

Special notes ...
With this form you must also file the following, if you have not already done so:
 Uniform Child Custody Jurisdiction Act (UCCJA) Affidavit,
 Florida Family Law Form 12.901(f), if the custody of a minor child(ren) is at issue.
Order ... These family law forms contain an Order Dissolving Temporary Injunction, Florida Family Law Form 12.941(e), which the judge may use. You should check with the clerk, family law intake staff, or judicial assistant to see if you need to bring a blank order form with you to the hearing. If so, you should type or print the heading, including the circuit, county, case number, division, and the parties' names, and leave the rest blank for the judge to complete at your hearing or trial.
Remember, a person who is NOT an attorney is called a nonlawyer. If a nonlawyer helps you fill out these forms, that person must give you a copy of Disclosure from Nonlawyer, Florida Family Law Form 12.900, before he or she helps you. A nonlawyer helping you fill out these forms also must put his or her name, address, and telephone number on the bottom of the last page of every form he or she helps you complete.
FORM 12.941(d). MOTION TO MODIFY OR DISSOLVE TEMPORARY INJUNCTION
 IN THE CIRCUIT COURT OF THE ________ JUDICIAL CIRCUIT,
 IN AND FOR _______ COUNTY, FLORIDA.
 Case No.: _____________________
 Division: _____________________
______________________________,
 Petitioner,
 and
_______________________________,
 Respondent.
 MOTION TO MODIFY OR DISSOLVE TEMPORARY INJUNCTION
( ) Petitioner ( ) Respondent requests the Court to enter an order ( ) dissolving
the temporary injunction issued in the above styled case ( ) modifying the temporary
injunction issued in the above styled case in the following manner: ________________
____________________________________________________________________________________
___________________________________________________________________________________.
I am the party against whom this temporary injunction has been granted and under
rule 1.610, Florida Rules of Civil Procedure, I request that a hearing be held within
5 days after the filing of this motion.
I certify that a copy of this document was [√ one only] ( ) mailed ( ) faxed and
mailed ( ) hand delivered to the person(s) listed below on {date} ___________
*256
Other party or his/her attorney:
Name: ___________________________
Address: ________________________
City, State, Zip: _______________
Fax Number: _____________________
Dated: __________________________
 ______________________________________
 Signature of Party
 Printed Name: _________________________
 Address: ______________________________
 City, State, Zip: _____________________
 Telephone Number: _____________________
 Fax Number: ___________________________
IF A NONLAWYER HELPED YOU FILL OUT THIS FORM, HE/SHE MUST
FILL IN THE BLANKS BELOW: [ fill in all blanks]
I, {full legal name and trade name of nonlawyer} _________________________________,
a nonlawyer, located at {street} _____________, {city} __________________,
{state} _______, {phone} __________, helped {name} _____________,
who is the [√ one only] ____ petitioner or ____ respondent, fill out this form.

INSTRUCTIONS FOR FLORIDA FAMILY LAW FORM 12.980(b),

PETITION FOR INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE

When should this form be used?
If you are a victim of any act of domestic violence or have reasonable cause to believe that you are in imminent danger of becoming a victim of domestic violence, you can use this form to ask the court for a protective order prohibiting domestic violence. Because you are making a request to the court, you are called the petitioner. The person whom you are asking the court to protect you from is called the respondent. Domestic violence includes: assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any other criminal offense resulting in physical injury or death to petitioner by any of petitioner's family or household members who are residing in the same single dwelling unit with petitioner.
The domestic violence laws only apply to your situation if the respondent is your spouse, former spouse, related to you by blood or marriage, living with you now or has lived with you in the past (if you are or were living as a family), or the other parent of your child(ren), whether or not you have ever been married or ever lived together. If the respondent is not one of the above, you should look at Petition for Injunction for Protection Against Repeat Violence, Florida Family Law Form 12.980(g), to determine if your situation will qualify for an injunction for protection against repeat violence.
If you are under the age of eighteen and you have never been married or had the disabilities of nonage removed by a court, then one of your parents or your legal guardian must sign this petition with you.
This form should be typed or printed in black ink. You should complete this form (giving as much detail as possible) and sign it in front of a notary public or the clerk of the circuit court in the county were you live. The clerk will take your completed petition to a judge. You should keep a copy for your records. If have any questions or need assistance completing this form, the clerk or family law intake staff will help you.

What should I do if the judge grants my petition?
If the facts contained in your petition convince the judge that you are a victim of domestic violence or that an imminent danger *257 of domestic violence exists, the judge will sign an immediate Temporary Injunction for Protection Against Domestic Violence, Florida Family Law Form 12.980(d). A temporary injunction is issued without notice to the respondent. The clerk will give your petition, the temporary injunction, and any other papers filed with your petition to the sheriff or other law enforcement officer for personal service on the respondent. The temporary injunction will take effect immediately after the respondent is served with a copy of it. It lasts until a full hearing can be held or for a period of 15 days, whichever comes first. The court may extend the temporary injunction beyond 15 days for a good reason, which may include failure to obtain service on the respondent.
The temporary injunction is issued "ex parte." This means that the judge has considered only the information presented by one sideYOU. The temporary injunction gives a date that you should appear in court for a hearing. At that hearing, you will be expected to testify about the facts in your petition. The respondent will be given the opportunity to testify at this hearing, also. At the hearing, the judge will decide whether to issue a Final Judgment of Injunction for Protection Against Domestic Violence, Florida Family Law Form 12.980(e), which will remain in effect for a specific time period or until modified or dissolved by the court. If you and/or the respondent do not appear, the temporary injunction may be continued in force, extended, or dismissed, and/or additional orders may be granted, including the imposition of court costs.
If the judge signs a temporary or final injunction, the clerk will provide you with the necessary copies. Make sure that you keep one certified copy of the injunction with you at all times!

What can I do if the judge denies my petition?
If your petition is denied on the grounds that it appears to the court that no imminent danger of domestic violence exists, the court will set a full hearing, at the earliest possible time, on your petition. The respondent will be notified by personal service of your petition and the hearing. If your petition is denied, you may: amend your petition by filing a Supplemental Affidavit in Support of Petition for Injunction for Protection, Florida Family Law Form 12.980(h); attend the hearing and present facts that support your petition; and/or dismiss your petition.

Where can I look for more information?
Before proceeding, you should read "General Information for Pro Se Litigants" found at the beginning of these forms. The words that are in "bold underline" are defined in that section. The clerk of the circuit court or family law intake staff will help you complete any necessary domestic violence forms and can give you information about local domestic violence victim assistance programs, shelters, and other related services. You may also call the Domestic Violence Hotline at 1-800-500-1119. For further information, see chapter 741, Florida Statutes, and rule 12.610, Florida Family Law Rules of Procedure.

Special notes ...
With this form you may also need to file the following:
 Uniform Child Custody Jurisdiction Act (UCCJA) Affidavit, Florida Family Law Form 12.901(f), must be completed and filed if you are asking the court to determine issues of temporary custody or visitation with regards to a minor child.
 Notice of Social Security Number, Florida Family Law Form 12.901(j), must be completed and filed if you are asking the court to determine issues of temporary child support.
 Family Law Financial Affidavit, Florida Family Law Form 12.901(d) or (e), must be completed and filed if you are seeking temporary alimony or temporary child support.
 Child Support Guidelines Worksheet, Florida Family Law Form 12.901(g), Child Support Guidelines Worksheet, MUST be filed with the *258 court at or prior to a hearing to establish or modify child support.
Additionally, if you fear that disclosing your address to the respondent would put you in danger, you should complete Petitioner's Request for Confidential Filing of Address, Florida Family Law Form 12.980(i), and file it with the clerk of the circuit court and write "confidential" in the space provided on the petition.
FORM 12.908(b). PETITION FOR INJUNCTION AGAINST DOMESTIC VIOLENCE
 IN THE CIRCUIT COURT OF THE ______________ JUDICIAL CIRCUIT,
 IN AND FOR __________ COUNTY, FLORIDA
 Case No.: ________________
 Division: ________________
_________________________________,
 Petitioner,
 and
_________________________________,
 Respondent.
 PETITION FOR INJUNCTION FOR PROTECTION AGAINST DOMESTIC
 VIOLENCE
 I, {full legal name} ________________________________, being sworn,
certify that the following statements are true:
SECTION I. PETITIONER (This section is about you. It must be completed.
However, if you fear that disclosing your address to the respondent would put
you in danger, you should complete and file Petitioner's Request for Confidential
Filing of Address, Florida Family Law Form 12.980(i), and write "confidential"
in the space provided on this form for your address and telephone number.)
1. Petitioner currently lives at: {street address} ______________________
 {city, state and zip code} ___________________________________________
 Telephone Number: {area code and number} _____________________________
2. Filing Fees
[√ one only]
___ a. Petitioner is paying the filing fee and sheriff's or other authorized law
 enforcement agency's service fees.
___ b. Petitioner does not have enough money to pay the filing fee or service fees
 and is filing an Affidavit and Motion for Waiver of Fees, Florida Family
 Law Form 12.980(a), and a Financial Affidavit, Florida Family Law
 Form 12.901(d) or (e). Petitioner asks that he or she not have to pay the fees
 necessary to process the petition and serve the injunction and other motions
 or orders needed to enforce the injunction, subject to later order(s) of the
 Court about the payment of such fees.
3. Petitioner's attorney's name, address, and telephone number is: __________
 __________________________________________________________________________.
 (if you do not have an attorney, write "none.")
SECTION II. RESPONDENT (This section is about the person you want to be
protected from. It must be completed.)
*259
1. Respondent currently lives at: {street address, city, state, and zip code}
 ______________________________________________________________________________
 ______________________________________________________________________________.
 Respondent's Driver's License number is: {if known}__________________.
2. Respondent is:
[√ all that apply]
___ a. the spouse of Petitioner. Date of Marriage: _______________________________
___ b. the former spouse of Petitioner.
 Date of Marriage: ____________________________
 Date of Divorce: _____________________________
___ c. related by blood or marriage to Petitioner.
 Specify relationship: _________________________________________________________
___ d. a person who is or was living in one home with Petitioner, as if a family.
___ e. a person with whom Petitioner has a child in common, even if Petitioner
 and Respondent never were married or living together.
3. Petitioner has known Respondent since {date} _________________________.
4. Respondent's last known place of employment: ___________________________________
 Employment address: ____________________________________________________________
 Working hours: _________________________________________________________________
5. Physical description of Respondent:
 Race: ___ Sex: Male ___ Female ___ Date of Birth: ______________________________
 Height: _____ Weight: _____ Eye Color: _____ Hair Color: _______________________
 Distinguishing marks or scars: _________________________________________________
 Vehicle: (make/model) ________ Color: ____ Tag Number: _____
6. Other names Respondent goes by (aliases or nicknames): _______________
7. Respondent's attorney's name, address, and telephone number is: __________
 __________________________________________________________________________
 (If you do not know whether Respondent has an attorney, write "unknown."
 If Respondent does not have an attorney, write "none.")
SECTION III. CASE HISTORY AND REASON FOR SEEKING PETITION
(This section must be completed.)
1. Has Petitioner ever received or tried to get an injunction for protection
 against domestic violence against Respondent in this or any other court?
 ___ Yes ___ No If yes, what happened in that case? (include case number, if
 known) ____________________________________________________________________
 __________________________________________________________________________.
2. Has Respondent ever received or tried to get an injunction for protection
 against domestic violence against Petitioner?
 ___ Yes ___ No If yes, what happened in that case? (include case number, if
 known) ___________________________________________________________________
 __________________________________________________________________________
3. Describe any other court case that is either going on now or that happened
 in the past, including a dissolution of marriage, paternity action, or child
 support enforcement action, between Petitioner and Respondent {include
 city, state, and case number, if known}: ________________________________
 ____________________________________________________________________________
4. Petitioner is the victim of an act of domestic violence or has reasonable cause
 to believe that he or she is in imminent danger of becoming the victim of an
 act of domestic violence. Below is a brief description of the latest act of
*260
 violence or threat of violence that causes Petitioner to honestly fear imminent
 domestic violence by Respondent. (Use additional sheets if necessary.)
 On {date} _________, at {location} _____________________,
 the Respondent ____________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________.
 [] check here if you are attaching additional pages to continue these facts.
5. Additional Information
[√ all that apply]
___ a. Other acts or threats of domestic violence as described on attached sheet.
___ b. this or other acts of domestic violence have been previously reported to
 {person or agency}: ________________________________________________.
___ c. Respondent owns, has, and/or is known to have guns or other weapons.
 Describe weapon(s): _______________________________________________________
___ d. Respondent has a drug problem.
___ e. Respondent has an alcohol problem.
___ f. Respondent has a history of mental health problems. If checked, answer
 the following, if known.
 Has Respondent ever been the subject of a Baker Act proceeding?
 ( ) Yes ( ) No
 Is Respondent supposed to take medication for mental health problems?
 ( ) Yes ( ) No
 If yes, is Respondent currently taking his/her medication? ( ) Yes ( ) No
SECTION IV. TEMPORARY EXCLUSIVE USE AND POSSESSION OF
HOME (Complete this section only if you want the Court to grant you temporary
exclusive use and possession of the home that you share with the respondent.)
1. Petitioner claims the following about the home that Petitioner and Respondent
 share or that Petitioner left because of domestic violence:
[√ all that apply]
___ a. Petitioner needs the exclusive use and possession of the home that the
 parties share at {street address} ________________________________,
 {city, state, zip code} ___________________________________________.
___ b. Petitioner cannot get another safe place to live because: ______________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________.
___ c. If kept out of the home, Respondent has the money to get other housing or
 may live without money at {street address} _______________________,
 {city, state, zip code} ___________________________________________
2. The home is:
[√ one only]
___ a. owned or rented by Petitioner and Respondent jointly.
___ b. solely owned or rented by Petitioner.
*261
___ c. solely owned or rented by Respondent.
SECTION V. TEMPORARY CUSTODY OF MINOR CHILD(REN) (Complete
this section only if you are seeking temporary custody of any minor child. You must
be the natural parent, adoptive parent, or guardian by court order of the minor
child(ren). If you are asking the court to determine issues of temporary custody
with regards to a minor child, you must also complete and file a Uniform Child
Custody Jurisdiction Act (UCCJA) Affidavit, Florida Family Law Form
12.901(f)).
Note: If the paternity of the minor child(ren) listed below has not been
established through either marriage or court order, the Court may deny temporary
custody, visitation, and/or support.
1. Petitioner is the natural parent, adoptive parent, or guardian by court order
 of the minor child(ren) whose name(s) and age(s) is (are) listed below.
 Name Place of Birth Birth date Sex
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
2. The minor child(ren) whom Petitioner is seeking temporary custody of:
[√ one only]
___ a. saw the domestic violence described in this petition happen.
___ b. were at the place where the domestic violence happened but did not see it.
___ c. were not there when the domestic violence happened this time but have
 seen previous acts of domestic violence by Respondent.
___ d. have not witnessed domestic violence by Respondent.
3. Name any other minor child(ren) who were there when the domestic violence
 happened. Include child(ren)'s name, age, sex, and parents' names. ______
 ___________________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
4. Visitation
[√ all that apply]
___ a. Petitioner requests that the Court order reasonable visitation by Respondent
 with the minor child(ren), as follows: ____________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
___ b. Petitioner requests that the Court order supervised exchange of the minor
 child(ren) or exchange through a responsible person designated by the Court.
 The following person is suggested as a responsible person for purposes of
 such exchange. Explain: ___________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
___ c. Petitioner requests that the Court limit visitation by Respondent with the
 minor child(ren). Explain: _______________________________________________
 ____________________________________________________________________________
 ____________________________________________________________________________
___ d. Petitioner requests that the Court prohibit visitation by Respondent with
 the minor child(ren) because Petitioner genuinely fears that Respondent
 imminently will abuse, remove, or hide the minor child(ren) from Petitioner.
 Explain: ___________________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
*262
SECTION VI. TEMPORARY SUPPORT (Complete this section only if you are
seeking financial support from the respondent. You must also complete and file a
Financial Affidavit, Florida Family Law Form 12.901(d) or (e). In addition, a
Notice of Social Security Number, Florida Family Law Form 12.901(j), must
be filed if you are seeking child support. A Child Support Guidelines Worksheet,
 Florida Family Law Form 12.901(g), must be filed with the court at or
prior to a hearing to establish or modify child support.)
[√ all that apply]
___ 1. Petitioner claims a need for the money he or she is asking the Court to
 make Respondent pay, and Respondent has the ability to pay that money.
___ 2. Petitioner requests that the Court order Respondent to pay the following
 temporary alimony to Petitioner. (Petitioner must be married to Respondent
 to ask for temporary alimony.)
 Temporary Alimony Requested $_______ every ( ) week ( ) other week
 ( ) month.
___ 3. petitioner requests that the Court order Respondent to pay the following
 temporary child support to Petitioner. (The respondent must be the natural
 parent, adoptive parent, or guardian by court order of the minor child(ren)
 for the court to order the respondent to pay child support.) Temporary child
 support is requested in the amount of $______ every ( ) week ( ) other
 week ( ) month.
SECTION VII. INJUNCTION (This section summarizes what you are asking the
Court to include in the injunction. This section must be completed.)
1. Petitioner asks the Court to enter a TEMPORARY INJUNCTION for
 protection against domestic violence that will be in place from now until the
 scheduled hearing in this matter.
2. Petitioner asks the Court to enter, after a hearing has been held on this
 petition, a final judgment on injunction prohibiting Respondent from committing
 any acts of domestic violence against Petitioner and:
 a. prohibiting Respondent from going to or within 500 feet of any place the
 Petitioner lives;
 b. prohibiting Respondent from going to or within 500 feet of the Petitioner's
 place(s) of employment or school; the address of Petitioner's place(s) of
 employment or school is: ____________________________________________________
 _____________________________________________________________________________
 c. prohibiting Respondent from contacting Petitioner by mail, by telephone,
 through another person, or in any other manner;
[√ all that apply]
___ d. prohibiting Respondent from going to or within 500 feet of the following
 place(s) Petitioner or Petitioner's minor child(ren) must go often {include
 address}: _______________________________________________________________
 ___________________________________________________________________________
 ___________________________________________________________________________
___ e. granting Petitioner temporary exclusive use and possession of the home
 Petitioner and Respondent share;
___ f. granting Petitioner temporary exclusive custody of the parties' minor
 child(ren);
___ g. establishing visitation rights with the parties' minor child(ren);
___ h. granting temporary alimony for Petitioner.
___ i. granting temporary child support for the minor child(ren);
___ j. ordering Respondent to participate in treatment, intervention, and/or
 counseling services;
___ k. referring Petitioner to a certified domestic violence center; and
*263
any other terms the Court deems necessary for the protection of Petitioner and/or
Petitioner's child(ren), including injunctions or directives to law enforcement agencies,
as provided in section 741.30, Florida Statutes.
I UNDERSTAND THAT BY FILING THIS PETITION, I AM ASKING THE
COURT TO HOLD A HEARING ON THIS PETITION, THAT BOTH RESPONDENT
AND I WILL BE NOTIFIED OF THE HEARING, AND THAT I MUST
APPEAR AT THE HEARING.
I HAVE READ EVERY STATEMENT MADE IN THIS PETITION, AND
EACH STATEMENT IS TRUE AND CORRECT. I UNDERSTAND THAT THE
STATEMENTS MADE IN THIS PETITION ARE BEING MADE UNDER
PENALTY OF PERJURY, PUNISHABLE AS PROVIDED IN SECTION 837.02,
FLORIDA STATUTES.
 ____________
 (initials)
Dated: _________________
 ______________________________
 Signature of Petitioner
STATE OF FLORIDA
COUNTY OF __________________
Sworn to or affirmed and signed before me on _______ by _________________.
 _____________________________________
 NOTARY PUBLICDEPUTY
 CLERK
 ______________________________________
 [Print, type, or stamp commissioned
 name of notary or clerk.]
___ Personally known
___ Produced identification
 Type of identification produced _________________.
NOTES
[1] See, e.g., Gregory v. Rice, No. 92,471, (Fla. petition filed Feb. 27, 1998) (habeas corpus petition filed with this Court based on improper determination of present ability to pay; procedure allowed hearing officer's assistant to run down hall to obtain judge's signature on recommended order); Aloisi v. Bacon, 717 So.2d 527 (Fla.1998) (habeas corpus petition filed with this Court based on improper incarceration of seventy-seven year-old-man diagnosed with dementia who was found to have present ability to pay $205,000 alimony purge amount solely on former wife's attorney's statement that he had paid no alimony since 1994).
[2] To allow for immediate use of the forms via the downloading of this opinion from our Internet site at "www.flcourts.org/courts/supct/rules.html," the forms, as attached in appendix B to this opinion, do not include strike-throughs and underlining to reflect deletions and additions where changes have been made. To view a copy of the forms with strike-throughs and underlining, please see the rules committee's "Comments From the Family Law Rules Committee on the Court's February 26, 1998, Order" located at "www.flcourts.org/courts/supct/proposed.html."